Hadley v. Chapin.

## HADLEY, trustee, &c. vs. CHAPIN and others.

Where C. and J., in 1832, gave a mortgage to H., as trustee for the heirs and devisees of K.; and the mortgage was conditioned for the payment of $1300, and interest annually, the principal to be paid within thirty days after a demand of the same; and in November, 1834, J., one of the mortgagors, procured himself to be appointed trustee, and gave security for the performance of his trust; and previous to the appointment of J. as trustee, he and the other mortgagor sold and conveyed a part of the mortgaged premises to A. and L., in equal moieties, and took from them mortgages to secure the payment of the purchase money; and J. afterwards purchased the interest of the other owners of the mortgaged premises, and took conveyances therefor, and also took assignments of the mortgages given by A. and L.; and in July, 1835, after J. was appointed trustee, and, while he was the holder of the bond and mortgage for $1300 as trustee, as well as the owner of that part of the mortgaged premises which had not been previously conveyed to A. and L., he conveyed the undivided half of that part of the mortgaged premises which then belonged to him, to M.; and in March, 1837, he also conveyed the other undivided half of the same premises to M., with warranty; and M. paid to J. $3000, on account of such purchases, while J. was such trustee and the holder of the said bond and mortgage for $1300; and parts of the premises conveyed by J. to M. were subsequently conveyed by M. to Y. S. and E.; and in August, 1840, J., having become insolvent was removed as trustee, and H. was appointed trustee in his place, and J. handed over to H. the said bond and mortgage as a subsisting security upon the mortgaged premises; and Y. S. and E., the purchasers from M., put in an answer, insisting that the mortgage for $1300 was paid while J. held the same as trustee;

*Held*, that, although J. was the holder of the mortgage for $1300, and the owner of the equity of redemption in that part of the premises conveyed to M. with warranty, at the time the conveyances to M. were executed, as the fact that J. held

Hadley *v.* Chapin.

the mortgage in the character of trustee appeared on the face of the mortgage, there could be no merger of the mortgage, without actual payment to the trustee; but that J. would himself be estopped both at law and in equity, by his covenants of warranty, from enforcing the payment of the mortgage for his own benefit; although nothing short of the actual receipt of the money by J. could deprive the cestuis que trust of their right to have the mortgage enforced against the land for their benefit.

*Also Held*, that the wife of A., one of the parties to the suit, who was entitled to dower in the part of the premises conveyed to A., was a competent witness for the grantees of M., to prove the payment of the mortgage; as she, by suffering the bill to be taken as confessed against her, admitted that the mortgage was a valid and subsisting incumbrance upon any interest she had in the premises. But if she had put in an answer, insisting upon the payment of the mortgage, as a defence to the suit, she would have had a common interest with the grantees of M. in the matters to which she was examined, and would have been an incompetent witness for them.

*Held further*, that if J. received money while he was holder of the mortgage as trustee, which money it was his duty to apply thereon, the law will make the application, if the money has not been misapplied by him, with the concurrence or consent of the grantees of M., under whom said grantees claim their several portions of the mortgaged premises.

*Also Held*, that, as J. and his co-mortgagor when they conveyed to A. & L., agreed that the grantors should pay off all the incumbrances, and that the grantees should retain a part of the purchase money, for which they gave their bonds and mortgages, until such incumbrances were paid off; and that, if the grantors did not pay off the incumbrances, A. & L. might discharge the same out of the moneys retained, it became the duty of J. to apply such moneys to the satisfaction of the incumbrance in question, if he received them from them, while he held such incumbrance as trustee.

*Also Held*, that, as J. was the holder of the mortgage as trustee, and was the owner of the equity of redemption of that part of the premises, which, as between him and A. & L. was primarily liable for the mortgage debt, a conveyance of the premises with warranty, and the actual receipt of the purchase money to the extent of the mortgage, would operate as a payment and extinguishment of the mortgage, both in equity and at law; unless the purchase money was misapplied by the trustee, with the knowledge and consent of M. The receipt of the money by the trustee, under such circumstances, operated as an actual payment of the mortgages; and a subsequent misapplication of the money, by the trustee, could not, either at law or in equity, revive the mortgage as against the purchaser or those claiming under him.

Where a variance between the mortgage set forth in the bill of complaint and the mortgage produced in evidence, is merely technical, and the defendant is not misled by the misstatement in the bill, the variance will be disregarded.

Where the principal of a mortgage was payable in thirty days after demand of payment, in a suit against the mortgagor and his grantees for the foreclosure of the mortgage, it was *held* that the written admission of the demand, by the mortgagor, in

connection with proof that such written admission was signed more than thirty days before the commencement of the suit, was sufficient evidence of the demand as against the grantees of the mortgagor.

THIS was an appeal, by four of the defendants, who appeared and answered in this cause, from a decree of the late vice chancellor of the seventh circuit. The bill was filed to foreclose a mortgage given by the defendants Chapin, Johnson, Maltby, and Gage, to Hendricks and Chamberlain, as trustees for the heirs and devisees of I. Kendig, deceased, upon certain premises in Seneca county. The mortgage was executed in March, 1832, and was conditioned to pay $1300, and interest annually; the principal to be paid within thirty days after the same should be demanded. The annual interest upon the mortgage was duly paid to the trustees, until March, 1834. The trustees and mortgagees having died, previous to November, 1834, Johnson, one of the mortgagors, on the 26th of November, 1834, procured himself to be appointed trustee for the devisees and heirs of Kendig, in the place of the former trustees, by an order of the vice chancellor of the seventh circuit; and gave security for the due performance of his trust. Previous to the appointment of Johnson as such trustee, he and the other mortgagors had sold and conveyed a part of the mortgaged premises to J. Alleman and A. Lucas respectively, in equal moieties, and had taken from them mortgages to secure the payment of the purchase money. Johnson afterwards bought the interests of Chapin, Maltby and Gage in the mortgaged premises, and took conveyances therefor, and also took assignments of their interests in the mortgages given by Alleman and by Lucas. In July, 1835, after Johnson was appointed trustee, and while he was the holder of the bond and mortgage in controversy in this cause, as well as the owner of that part of the mortgaged premises which had not previously been conveyed to Alleman and Lucas, he conveyed the undivided half of the part of the mortgaged premises which then belonged to him, to W. McCarty; and in March, 1837, he also conveyed the other undivided half of the same premises to McCarty, with warranty. McCarty paid to Johnson three or four thousand dollars on account of those purchases, while he was

Hadley v. Chapin.

the holder of the bond and mortgage in controversy in this suit as such trustee. Parts of the premises thus conveyed by Johnson to McCarty were subsequently conveyed by the latter to the defendants W. Yost, J. H. Seighfried, and E. B. Mickley. And W. Yost afterwards sold part of what had been thus conveyed to him, to the defendant C. Yost.

In August, 1840, Johnson having become insolvent, an application was made to the vice chancellor to remove him as trustee. He was removed accordingly, and the complainant S. G. Hadley was appointed trustee in his place. And Johnson having delivered the original bond and mortgage to the new trustee, as a valid and subsisting security upon the mortgaged premises, the new trustee applied to the vice chancellor for directions, in relation to the same. The vice chancellor thereupon authorized the complainant to institute this suit, for the foreclosure of the mortgage; upon being indemnified by Johnson against any costs to which the trust estate might be subjected in consequence of the suit.

This suit was instituted accordingly. And Johnson, Chapin, Maltby, and Gage, the original mortgagors, together with W. Yost, C. Yost, and Seighfried and Mickley, and other persons who were then owners of different portions of the mortgaged premises, were made defendants. The defendants W. Yost, C. Yost, Seighfried, and Mickley, the appellants, put in an answer setting up their several claims to portions of the mortgaged premises, and insisting therein that the mortgage was paid and discharged while Johnson held the same as trustee; and setting forth the two conveyances from Johnson to McCarty, under whom they had derived their titles. All the other defendants suffered the complainant's bill to be taken as confessed against them. The cause was heard upon pleadings and proofs as to the defendants who had answered. And the vice chancellor having made a general decree for the foreclosure and sale of the mortgaged premises, without excepting the parts thereof which belonged to the defendants who had answered and defended the suit, those defendants appealed to the chancellor.

Hadley v. Chapin.

*J. K. Richardson,* for the appellants. There is a variance between the mortgage proved and the one set forth in the bill. The proof of the demand of payment of the mortgage money is not in accordance with the terms of the mortgage, nor with the allegation in the bill.

The mortgage estate, under the mortgage set forth in the bill, was merged in the greater estate—the equity of redemption—which Johnson owned while he held the mortgage. The mortgage, by such merger, became extinguished; and no proceedings could be had to foreclose the same. The holding of the mortgage as trustee, by Johnson, did not prevent the merger. Johnson had the entire control of the mortgage, in like manner as if he had been an assignee in his individual right. He could receive payment of the same. He could acknowledge satisfaction, without receiving payment. The cestuis que trust cannot be injured by the merger. Johnson and his sureties are liable to account to them for the amount of the mortgage. The complainant ought to have pursued his remedy against Johnson and his sureties, and not have attempted to foreclose the mortgage against innocent and bona fide purchasers. If Johnson had received actual payment of the mortgage, the only remedy of the complainant would have been against Johnson and his sureties. The subsequent acts of Johnson show that he intended that the mortgage should be extinguished. (*James* v. *Morey,* 2 *Cowen,* 285, 6, 7.) The purchase by Johnson of the entire interest in the equity of redemption, and his subsequent conveyances to McCarty with warranty, are acts which conclusively show that his intention was, that there should be a merger and extinguishment of the mortgage. (*Idem,* 282 *to* 287, 300 *to* 309, 317 *to* 320.)

Johnson is estopped, by his conveyance with warranty to McCarty, from alleging the existence of the mortgage, as an incumbrance on the premises. And the complainant is in no better situation, to enforce the mortgage, than Johnson would have been had he continued trustee. A mortgage not a valid lien in the hands of the mortgagee, is not a valid lien in the hands of an assignee. (*Pendleton* v. *Fay,* 2 *Paige,* 202.) The as-

Hadley v. Chapin.

signee takes it subject to all existing equities as between the prior parties. (*L'Amoureux* v *Vandenburgh*, 7 *Paige*, 316.) Johnson is estopped at least as to the defendants who derive their title from McCarty, Johnson's grantee. (*Vroom* v. *Ditmas*, 4 *Paige*, 526; *Kellogg* v. *Wood*, *Id.* 578.) The doctrine of estoppel extends to bona fide purchasers from parties to the deed or instrument which is to operate as an estoppel. (*Jackson* v. *Waldron*, 13 *Wend.* 189.) An estoppel in pais is as conclusive as an estoppel by deed or matter of record. In this case there is both an estoppel by deed and in pais. The proofs also establish the fact of the payment of the mortgage to Johnson. Several funds were in his hands, out of which he might, and ought, and probably did, pay this mortgage. The law will regard as done, what, in equity and good conscience, ought to have been done. The same hand which received the money, was to pay. (*Kellogg* v. *Wood*, 4 *Paige*, 595.)

*J. McAllister*, for the respondent. The complainant is entitled to demand and receive the moneys due on the mortgage set forth in the bill, and to enforce payment thereof as trustee. The mortgage was recorded prior to the conveyance by Johnson to McCarty. And the only defence set up in the answer of the appellants is payment. They have no equities. They purchased with full knowledge of the mortgage and of its lien on the premises. The appellants do not set up any fraud on the part of Johnson, as against them or their grantor, McCarty. The conversations or declarations of Johnson, in relation to his intention to pay the mortgage, made subsequent to the conveyance to McCarty, of which the appellants had neither knowledge nor notice when they purchased, cannot be evidence, in their favor, of the payment of the mortgage. Johnson holding the mortgage as trustee, could not discharge the same except upon the actual receipt of the money due on it. He could not pay his individual debt, with the mortgage, to the injury of the cestuis que trust. Even an acknowledgment of satisfaction of the mortgage, by Johnson, without actual payment thereof, would have been no defence to the bill; except, perhaps, in favor of

bona fide purchasers, after the record of the satisfaction. Much less can the mere verbal declarations of Johnson, without actual payment, be deemed a discharge of the mortgage. But Johnson never did declare that the mortgage had been paid. The witness, Mrs. Alleman, who proved certain declarations of Johnson, was an incompetent witness for the appellants. The answer sets up, that the obligors and mortgagors in the bond and mortgage, or some of them, paid to Johnson the money due on the mortgage. This allegation should have been proved as laid. Johnson being one of the mortgagors and holding the mortgage as trustee, could not pay the money so as to discharge the security, in any other way, than by actually applying the money on the mortgage, to the benefit of the cestuis que trust. There is no evidence that he has done so. There was no merger of the mortgage. Johnson held the mortgage and the legal title in different rights. Where that is the case, there can be no merger. But Johnson was at no time sole owner of the legal title. No moneys received by Johnson, unless received expressly as payment on the mortgage, could operate in law as payment. No moneys were so received. The bond and mortgage are conclusive evidence of a debt due, until payment is proved. No payment has been proved in this case. Where a trustee is dealing with trust funds, his acts will be construed most strongly in favor of the trust fund. It appears affirmatively, from the testimony, that no part of the funds in the hands of Johnson were applied, or intended to be applied, in payment of the mortgage.

THE CHANCELLOR. The first objection to the complainant's right to a decree, which was made by the appellants in the court below, was that the mortgage produced in evidence was variant from that stated in the bill. This variance consisted in stating in the bill, that the mortgagors covenanted in, and by such mortgage, to pay the money secured thereby. The objection, however, was merely technical; as they did in fact give their bond for the payment of the mortgage debt, at the same time the mortgage was executed. Although there is no express

Hadley v. Chapin.

covenant in the mortgage itself to pay the debt, and the revised statutes have abolished the implied covenant arising from the condition of the mortgage, the defendants' answer shows they could not have been misled by this misstatement in the bill. Besides, the bill itself refers to the record of the mortgage, and the book and page in which it is contained ; and the answer admits that statement of the bill to be correct, in reference to the mortgage which was actually given by the mortgagors, and which was produced by the complainant upon the hearing. I am inclined to think, therefore, that this erroneous statement in the bill as to the supposed covenant contained in the mortgage, should be disregarded. In the recent case of *The Ontario Bank* v. *Schermerhorn*, (10 *Paige's Rep.* 109,) this court disregarded a variance between the date of a mortgage as stated in the bill, and the true date thereof, as the same appeared upon the hearing ; where it appeared from the defendant's answer that he was not misled by the variance, but was fully apprised as to the mortgage which the bill was filed to foreclose, and had set up his defence in reference to such mortgage.

Neither is the objection well taken, that the demand of payment, thirty days previous to the commencement of the suit, was not sufficiently proved. A mere admission by the mortgagors, that such a demand had been made, would not probably have been legal evidence of the fact, as against the other defendants, who had, by their answer, put the fact of such demand in issue. The proof in this case, however, goes much further than a mere admission of a past fact by a third person. The written admission, produced in evidence, purports to have been given by the persons upon whom the demand was made, on the day of such demand. And the solicitor in the cause swears that this admission was signed, by the mortgagors, more than thirty days before the commencement of the suit. . This he could only have known, from having seen the written admission signed by the mortgagors, in their own hand-writing ; which he proves, more than thirty days previous to his filing of the bill. The admission itself, therefore, is equivalent to an actual demand of payment at the time such admission was signed by the mortgagors.

Besides, the interest upon the mortgage, if the mortgage had not been paid, was due and payable annually, and without any demand. This, of course, was sufficient to authorize the filing of the bill.

Although the defendant Johnson was the holder of the mortgage, and was the owner of the equity of redemption in the part of the mortgaged premises conveyed by him to McCarty, at the time the conveyances to McCarty were made, the fact that he held the mortgage merely in the character of trustee, appeared upon the face of the mortgage, and of the order of the court substituting him as trustee in the place of the original mortgagees who were dead. This, in equity at least, would prevent a merger which would have the effect to deprive the cestuis que trust of the benefit of the mortgage, without an actual payment to the trustee. Although Johnson himself, both at law and in equity, would be estopped by his covenants of warranty, from enforcing the payment of the mortgage for his own benefit, nothing short of the actual receipt of the money, by him, could deprive the cestuis que trust of their right to have the mortgage enforced against the land, for their benefit. The question then arises whether, upon the evidence in this case, the court is authorized to declare that the mortgage was actually paid to Johnson, while he was trustee; which question I will now proceed to consider.

Upon this question the court must lay entirely out of view what Johnson may have sworn to before the master, as it is clearly not evidence as against these defendants. The testimony of Mrs. Alleman and of McCarty was properly received in this cause to prove the fact of payment; as neither of them was interested in the event of the suit, in favor of the parties calling them as witnesses. Mrs. Alleman was the widow of a grantee of a part of the mortgaged premises, which was conveyed to her husband previous to the appointment of Johnson as trustee. She was therefore probably entitled to dower in that part of the mortgaged premises. And if she had put in an answer, insisting upon the payment of the mortgage, as a defence to the suit, she would have had a common interest with these appellants in the matters to which she was examined. But by suffering the bill to be

taken as confessed against her, she admits the mortgage to be a valid and subsisting incumbrance upon any interest she may have, in the part of the mortgaged premises which was conveyed to her husband, in September, 1832. All the defendants, except these four appellants, having suffered the bill to be taken as confessed against them, they thereby admitted the amount due upon the mortgage as charged in the bill, for all the purposes of this suit; and proof of payment of the mortgage will only go to discharge the lands of the four defendants who have answered and set up that defence. The witness, Mrs. Alleman, therefore, instead of being interested in favor of establishing the defence of those defendants, had a direct interest the other way. For if their lands are charged with the mortgage, they must be first sold to satisfy the debt and costs, upon the principle of charging the lands in the inverse order of 'their alienation; the deed to her husband having been given several years before either of the deeds to McCarty, under which the appellants claim their respective portions of the mortgaged premises. Neither has McCarty any interest in the event of this suit in favor of the defendants who have answered, they having released him from his covenants of warranty; although he would have had an interest in the question to which he was examined, if he had not previously parted with his interest in other portions of the mortgaged premises. Even in that case, however, the objection would have gone to his credibility only, but not to his competency.

To show the mortgage paid, it is not necessary for the defendants to prove that Johnson actually endorsed moneys upon the bond and mortgage, or that he had paid the amount of such bond and mortgage to the cestuis que trust, or to the new trustee. For, if he received money, while he was the holder of that bond and mortgage as trustee, which it was his duty to apply thereon, the law will make the application; unless such money has been misapplied by him, with the concurrence or consent of these defendants, or of McCarty under whom they claim their several portions of the mortgaged premises.

It appears by the testimony of G. J. Alleman that at the time

of the purchase of the part of the premises which was conveyed in moieties to J. Alleman and A. Lucas, in September, 1833, it was agreed that the grantors should pay off all the incumbrances, and that the grantees should retain a part of the purchase money, for which they then gave their bonds and mortgages, until such incumbrances were paid off; and that if the grantors did not pay off the incumbrances, Alleman and Lucas might discharge them out of the moneys thus retained. Under that agreement, it became the duty of Johnson to apply that amount to the satisfaction of the incumbrance in question, if he received it from them while he held such incumbrance as trustee. What became of the Lucas mortgage does not appear; nor is there any evidence to show whether it was paid before or after Johnson became the trustee. The Alleman mortgage appears, however, to have been assigned to him, by Chapin and Gage, previous to his appointment as trustee. And by an endorsement on that mortgage, it appears that interest had been paid thereon up to the 20th of March, 1834, together with $175 of the principal. And as the last payment of the principal did not become due until after Johnson was appointed trustee, and as satisfaction was acknowledged by Johnson in September, 1835, about ten months after his appointment as trustee, I think it may fairly be inferred, that he received the residue of that mortgage, while he was the holder of the bond and mortgage in question; and the money thus received by him ought to have been endorsed thereon, as a payment thereof pro tanto. But that would only go to discharge the incumbrance in part, and would still leave about half of the incumbrance unsatisfied; unless a similar sum was received upon the mortgage of Lucas.

The testimony of McCarty, however, as to the subsequent transactions with him, satisfies me, beyond all reasonable doubt, that the bond and mortgage in question ought to be considered as fully paid to Johnson and satisfied, while he held the same as trustee. At the time of the several conveyances to McCarty, Johnson was the holder of this mortgage as trustee, and was also the owner of the equity of redemption in that part of the mortgaged premises which, as between him and Alleman and

Lucas, was primarily liable for the payment of the mortgage debt. A conveyance of the premises with warranty, therefore, and the actual receipt of the purchase money to the extent of this mortgage, would operate as a payment and extinguishment of the mortgage, in equity as well as at law; unless the purchase money thus received was misapplied by the trustee with the knowledge and consent of McCarty. For, it was the duty of the trustee, in that case, to retain out of the purchase money paid, for the entire fee, the amount of the mortgage which he held as trustee; and only so much thereof as was the proceeds of the equity of redemption, could be applied to his own use, without rendering him guilty of a breach of trust. And the law will not presume an intended breach of trust, on the one hand, or an intention to defraud the purchaser, on the other, by leaving the mortgage unsatisfied. The receipt of the money, by the trustee, under such circumstances, operated as an actual payment of the mortgage. And if the trustee misapplied the money afterwards, it was a misapplication of money which he held as trustee; and such misapplication would not, either at law or in equity, revive the mortgage, as against the purchaser or those claiming under him. The legal effect of the transaction, in this case, would be the same, if the trustee took securities for the purchase money on such sale, and afterwards received the money on such securities, to the extent of the mortgage, during the time he was trustee. The testimony of McCarty, in connection with that of Birdsall, clearly establishes this state of facts. McCarty proves that an amount far exceeding what was due on this mortgage, was paid by him to Johnson, on account of the purchase money, while the latter was the holder of that mortgage as trustee. The mortgage must be considered as paid, so far as the interests of the appellants are concerned, who claim through Johnson's covenants of warranty.

The decree of the vice chancellor must therefore be reversed, with costs, so far as concerns the appellants, and the several parcels of the mortgaged premises to which they have derived title under conveyances from McCarty, as stated in their answer. And the bill, as to them, must be dismissed with costs.