Keyes.
1k 87
155 388

JOHN BINSSE, Executor, and LOUISA LA FARGE, Executrix, etc., of John La Farge, deceased, Appellants, *v.* ALONZO C. PAIGE, THE PRESIDENT, DIRECTORS AND COMPANY OF THE SCHENECTADY BANK, and ELIZA PECK, Trustee, etc., Respondents.

The conveyance of mortgaged premises subject to the mortgage thereon, does not make the grantee of such premises personally liable to discharge the mortgage.

In equity, the question of mortgage is one of intention of the parties.

*It seems* that a clause in a contract providing that in case any dispute arise, the same shall be settled by arbitrators, is no bar to an action upon such contract.

A trustee receiving his commission cannot charge in addition a counsel fee for · himself although he be a lawyer.

THIS suit was commenced in the late Court of Chancery in June, 1846; by John La Farge, since deceased, to procure his release from liability to pay the balances due upon certain mortgages he gave to Gerard W. Morris on three lots of land situated on King street in the city of New York, which balances remained due after a sale of the mortgaged premises pursuant to decrees of said Court of Chancery, and by which decrees said La Farge was adjudged liable to pay said balances, or to have accounts taken of certain rents and profits of the mortgaged premises, which had been received by the defendants, or by Paige for them, and have them applied toward the payment of said balances or deficiencies. The complaint also contained a prayer for general relief. After the suit was transferred to the Supreme Court it was referred to a referee, who made his decision in 1853, by which he determined that La Farge was not entitled to be released from personal liability to pay said balances or deficiencies. He also held that the defendants were entitled to collect under said decrees the deficiency due thereon after deducting therefrom the net amount of rents and profits of the mortgaged premises received by the defendant Paige, less expenses paid by him, and " a reasonable counsel fee to be allowed to the defendants out of such rents," which counsel fee he fixed at $500. He also allowed Paige to deduct out of such rents his actual expenses for stage fare, personal expenses, charges for drawing

leases, charges for insurance, five per cent commissions, and $165.57 commissions for receiving from the master in chancery, who sold the mortgaged premises, and paying over to the owners of the foreclosure decrees the net proceeds of said premises. He fixed the amounts due on the several decrees, and held that the defendants were entitled to executions thereon to collect such amounts. He further decided that the complaint, as to all the relief asked therein, should be dismissed, with costs, and that a judgment should be entered in the suit against La Farge, in accordance with his decision and directions. A judgment was entered in conformity with the decision and directions of the referee, which was affirmed by the Supreme Court at a General Term in the fourth district. The complainant having died, his executors were substituted as parties in his place, and they appealed from the judgment to this court.

All other facts necessary to a correct understanding of the decision of this court are contained in the following opinion:

*John H. Reynolds*, for the appellants.

*A. C. Paige*, for the respondents.

BALCOM J. John La Farge executed the mortgages to Morris in 1831, and also bonds for the payment of the money for which they were taken. No person ever agreed with him to pay or discharge the mortgages. He was a defendant in the suits for their foreclosure and was properly adjudged liable to pay any deficiencies there might remain due upon them after applying thereon the net proceeds of the sale of the mortgaged premises.

The correctness of the decrees, when made, is not disputed by the appellants' counsel. But he contends that the purchase of the decrees by Paige, in trust for the Schenectady Bank and Mrs. Peck, and the sale of the equity of redemption in the mortgaged premises from time to time until the same was purchased by Samuel Jones Mumford subject to the mortgages and his grant of the same to Paige in trust for the bank and Mrs. Peck with a general covenant of warranty, before the sale of the premises under

the decrees, shifted the primary liability to pay the balances that remained due on the mortgages and decrees after the sale, from La Farge to Mumford, and entitled the former to require the defendants to apply the avails of all collateral securities they or either of them took of Mumford, for the payment of the decrees, in discharge of the balances due thereon, before they could call upon La Farge to pay the same.

This position is untenable. For La Farge only conveyed the premises subject to the mortgages, and his grantee did not, nor did any subsequent grantee down to Mumford, agree with his grantor to pay the same. The fact that the premises were conveyed subject to the mortgages did not make the grantees liable to pay the same. (*Trotter* v. *Hughes*, 2 Kern., 74.) If the several conveyances had contained words showing that the grantees had agreed to pay the mortgages, the acceptance of such conveyances by them would have bound them to pay the same. But they did not contain words of that import. The decision in *Trotter* v. *Hughes* not only establishes this, but also shows that the agreement of Mumford with Paige to pay the decrees did not release La Farge from his primary liability to pay any deficiencies thereon.

The decrees were not merged by the purchase of them by Paige, though he then was the owner of the equity of redemption in the premises described in them. Paige acted as trustee for the Schenectady Bank and Mrs. Peck, and the instrument that conveyed the premises to him contained a provision that the same was not intended by either party to operate as a merger of the interest he would acquire by taking an assignment of the decrees. Hence there was no merger. (2 Cowen, 246 ; *Hadley* v. *Chapin*, 11 Paige, 245.)

The declaration of trust, made by Paige, dated the 15th day of July, 1839, in which he stated the purposes for which he took mortgages from Mumford upon the lot fronting on the Bowery in New York city, and on certain real estate situated in Elizabethport, New Jersey, and for which he took the conveyance from Mumford of the equity of redemption

12

in the mortgaged premises, did not affect the rights of La Farge; and he could not avail himself of it, or use it against the defendants or either of them; for he was not a party to it, and no consideration therefor moved from him. Besides, it did not profess to relieve him from his primary liability to pay the decrees, though the fair inference from it, is that the author supposed, when he executed it, that the mortgaged premises would sell for enough to satisfy the decrees.

The decrees were entered in April, 1839. Nothing was done toward enforcing them until the 25th day of September, 1844, when La Farge gave Paige a stipulation that the latter might sell the mortgaged premises under them, and if the premises should not sell for a sufficient sum to pay the decrees that payment of the deficiency might be enforced against the former, personally, by executions, as directed in the decrees, without making any previous application to the court for that purpose. The stipulation contained a provision for the application of the rents and profits of the mortgaged premises to the payment of any balance that might remain due on the decrees after the sale, similar to that in the bond to which I shall presently refer.

Paige received the rents and profits of the premises as trustee for the Schenectady Bank and Mrs. Peck, while he held the decrees and owned the equity of redemption in the premises prior to the sale; and after the sale, at the request of La Farge, he vacated the docket of the decrees, and La Farge then gave him a bond by which he bound himself to Paige to pay the balance which should remain due on the decrees after deducting therefrom the net proceeds of the sale and the balance of the rents and profits of the premises received by or which had come to the Schenectady Bank or their solicitors, agents or attorneys, or of any person or persons by or on their behalf, or with their permission or assent, etc., after deducting from such rents all legal and just charges and allowances, such balance to be liquidated by a reference to the master in chancery who sold the premises, if the same should not be liquidated by the parties or Court

of Chancery, in case exceptions were taken to the report of the master.

The position of Paige in respect to the title to the decrees and the ownership of the equity of redemption in the premises and his acceptance and use of the stipulation, and his taking the bond bound him, and the other defendants for whom he acted, to allow La Farge, toward the payment of the balance due upon the decrees, the net rents and profits of the premises received by Paige for the defendants, after deducting therefrom all legal and just charges and allowances.

The fact that the stipulation and bond provided that the amount of such net rents and profits should be liquidated by a reference to a master in chancery, and that Paige offered to have the same ascertained in that manner, prior to the commencement of this suit, did not deprive La Farge of the right to have the amount of such net rents and profits ascertained and so applied in this suit. The right to have the same so applied was secured to him by the stipulation and bond and by Paige's acceptance of them and his acting upon the former; and Paige could have proceeded with the reference on giving notice thereof to La Farge, and his neglect so to do balanced the neglect of La Farge respecting the reference. It seems that a clause in a contract, providing that in case any dispute should arise in regard to the same should be settled by arbitrators, is no bar to an action upon the contract. (*Haggart* v. *Morgan*, 1 Seld., 422.) This principle is applicable to this case, and shows that the provision in the stipulation and bond for a reference to a master in chancery, to ascertain the net amount of the rents and profits of the premises, is no obstacle to the allowance of the same to La Farge in this suit.

The referee erred in allowing the defendants to retain $500 out of the net amount of the rents and profits, as a reasonable counsel fee, to the defendants. That was not a legal or just charge, or a legal or just allowance as against La Farge. Paige had already been allowed his actual expenses out in leasing and taking care of and looking after the premises, besides fees for particular services and a commis-

sion of five per cent out of the rents received; and he could not charge a counsel fee, as trustee, in addition thereto, simply because he was a lawyer. Chancellor KENT held, in *Green* v. *Winter* (1 Johns. Ch., 26), that where a trustee, who was a counselor-at-law, was to be allowed for " all his advances and responsibilities," though he was entitled to a liberal indemnity for his expenses and responsibilities incurred in the due and faithful execution of his trust, yet he was not entitled to a counsel fee as a general retainer, nor for anything more than what is understood, in the language of a court of equity, to be " just allowances." He rejected, in that case, a charge of $500 for " a counsel fee as a general retainer." The principle established in that case is applicable to this; and the charge of $500, as a reasonable counsel fee for the services of Paige, in leasing and taking care of and looking after the mortgaged premises, should have been disallowed.

On what principle Paige was allowed $165.57 commissions for receiving the net proceeds of the sale of the mortgaged premises, from the master in chancery who made the sale, and paying the same over to his co-defendants, is more than I have been able to discover. According to the bond Paige took from La Farge, as well as upon principle, the entire net proceeds of the sale of the premises were to be deducted from the sum due upon the decrees in ascertaining the amount of the deficiency. It seems to me to be very clear that this charge of $165.57 should have been rejected, on the ground that it was not a legal or just charge, or a legal or just allowance.

I am of the opinion that for the error of the referee in allowing the defendants the two charges of $165.57 and $500, the judgment of the Supreme Court should be modified or reversed, and a new trial granted, without costs to either party in this court or at the General Term of the Supreme Court.

All the judges concurring,

Judgment reversed.