JOAB L. CLIFT, Respondent, v. MARY E. MOSES, Appellant, Impleaded with SIDNEY SMITH, as Administrator, etc., and Others.

*A devisee of real estate, subject to a power of sale to pay debts — is entitled to receive the rents and profits until a sale is made—when a power to sell or mortgage to pay debts and legacies will not be held to effect a conversion of realty into personalty.*

By his last will and testament Charles Pardee ordered and directed his executors to pay all his just debts and funeral expenses as soon after his death as could conveniently be done; he gave to his adopted daughter, Mary E. Moses, the household furniture; he gave his gold watch to one person, and three legacies, each of $100, to three other persons named in his will; he gave to his daughter the rest and residue of his estate, real and personal, making her residuary legatee of his will; he appointed Benoni Lee and Mary E. Moses executors of his will, and further provided as follows: " I give and devise to my executor and executrix all my real and personal property of every kind, in trust, for the purpose of paying my debts and legacies named in this my last will, giving them power to sell, mortgage or convey any and all real estate for the purposes above named in this my last will."

The will having been admitted to probate on July 17, 1878, and the executor and executrix having renounced, letters of administration, with the will annexed, were issued to one De Witt, and upon his death, in 1880, new letters were issued to the defendant Smith, who was also, on November 18, 1880, appointed a trustee under the will to execute the power in trust. From the date of the death of the testator, April 9, 1878, to July 1, 1881, when the testator's real estate was sold by the trustee for the purpose of paying his debts, Mary E. Moses, the devisee named in the will, was in possession of the testator's real estate, and collected the rents thereof amounting to $7,222.92. The estate being insolvent, and the administrator refusing to sue to recover the sum so collected, the plaintiff, a creditor of the estate, brought this action to recover the sum for distribution among the creditors.

*Held*, that if it was conceded that the title to the testator's real estate vested, upon his death, in Mary E. Moses, the devisee, subject to be divested by the execution of the power of sale, then, until such power was executed, she alone was entitled to the possession of the realty, and to collect the rents for her own benefit, and the action could not be maintained.

That it was not necessary, to the decision of this case, to consider whether or not the will charged the testator's debts upon his real estate, as, under the statutes of this State, the debts were charged and made a lien upon the whole estate, and the burden upon the realty, or the personal liability of the devisee for the testator's debts, would not be increased although the debts were, by the will, specifically charged upon the realty.

That a finding of the referee that, under the will, Mary E. Moses, by receiving the rents, became personally liable to pay all the testator's debts could not be sustained.

That the realty was not, by this will, converted into personalty either "out and out" or even for the purpose of paying the testator's debts and legacies.

That, from the fact that after the testator's death, which occurred eighteen months after the date of the will, he was found to be insolvent, it could not be inferred that he intended to effect a conversion of his realty into personalty.

To effect such a conversion, in the absence of a direction that a sale must be made in any event, it must clearly appear that the testator intended it.

APPEAL from a judgment in favor of the plaintiff, entered in Onondaga county, upon the trial of this action by the court without a jury.

April 9, 1878, Charles Pardee died, leaving a last will and testament, of which the following is a copy:

"I, Charles Pardee, of Skaneateles, county of Onondaga, being of sound mind and memory, do make, publish and declare this to be my last will and testament in the manner following: I do order and direct my executor, hereinafter named, to pay all my just debts and funeral expenses as soon after my decease as can conveniently be done. I give and bequeath unto my adopted daughter, Mary E. Moses, wife of Lucian Moses, the household furniture and whatever may be in the house and used as housekeeping articles. I give and bequeath unto Amos R. Pardee my gold watch. I give and bequeath to Eliza Bronson, widow of Henry G. Bronson, deceased, one hundred dollars; to Mrs. Sarah Greenman, one hundred dollars; to Mrs. Triphina Austin, if living at my decease, one hundred dollars. I do give unto my daughter, Mary E. Moses, the rest and residue of my estate, real and personal, making her residuary legatee of this my last will and testament. I do hereby nominate and appoint Benoni Lee and Mary E. Moses my executor and executrix of this my last will and testament, revoking all former wills by me made. I give and devise to my executor and executrix all my real and personal property of every kind, in trust, for the purpose of paying my debts and legacies named in this my last will, giving them power to sell, mortgage or convey any and all real estate for the purposes above named in this my last will.

"In witness whereof, I, the said Charles Pardee, have hereunto set my hand and seal this 19th day of September, 1876.

"C. PARDEE. [L. S.]"

July 17, 1878, the will was probated, and the executor and executrix nominated therein having renounced, letters of administration, with the will annexed, were issued to Jacob C. De Witt, who qualified and thereafter acted as administrator until October 1, 1880, when he died, and November 1, 1880, letters of administration, with the will annexed, were issued to Sidney Smith, one of the defendants, who has, since that date, acted as such administrator. November 18, 1879, De Witt was appointed as trustee under the will, to execute the power in trust, and November 8, 1880, Smith was appointed a trustee, vice De Witt, who had died. July 1, 1881, the power of sale contained in the will was executed and the testator's real estate sold for the purpose of paying his debts. Between April 9, 1878 (the date of the testator's death) and July 1, 1881, (the date of the sale of the real estate), Mary E. Moses (the devisee named in the will) was in possession of the testator's real estate, and collected rents therefrom amounting to $7,221.92. The estate is conceded to be insolvent. The administrator refused to sue for the recovery of the sum so collected, and the plaintiff, one of the creditors of the estate, brought this action to recover the sum for distribution among the creditors. The administrator and all of the creditors of the estate are joined as defendants with Mrs. Moses, but she alone defends. The case was tried at Special Term, where it was held that Mrs. Moses was liable to pay over the rents collected, and a judgment was entered directing her to pay them to the administrator for distribution among the creditors, from which judgment she appealed.

*William G. Tracy*, for the respondent.

*Louis Marshall*, for the appellant.

FOLLETT, J. :

The heir, *and at law* the devisee, of an insolvent decedent is entitled, as against the personal representatives of creditors, to receive and retain as his own, rents and profits arising from realty between the date of the decedent's death and the date of the sale of the real estate, for the payment of the decedent's debts. (*Gibson v. Farley*, 16 Mass., 280; *Boynton v. Peterborough and Shirley R. R. Co.*, 4 Cush., 467; *Newcomb v. Stebbins*, 9 Metc., 540; *Lobdell v. Hayes*, 12 Gray, 236; *Towle v. Swasey*, 106 Mass., 100;

*Campbell* v. *Johnston*, 1 Sandf. Ch., 148; 2 Will. Ex. [6th Am. ed.], 893; Schouler Ex. and Adm., § 216.) This rule is too firmly established to be questioned in this court.

"SECTION 56. A devise of lands to executors or other trustees, to be sold or mortgaged, where the trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees; but the trust shall be valid as a power, and the lands shall descend to the heirs or pass to the devisees of the testator, subject to the execution of the power." (1 R. S., 729.)

Upon the assumption that this case is within this section it was held at Special Term, and it is now conceded by the counsel for both parties, that the title to the testator's real estate upon his death vested in Mary E. Moses, the devisee, subject to be divested by the execution of the power of sale, and until it was executed she alone was entitled to the possession of the realty, and entitled to collect the rents. If the concession expresses the rule of law applicable to this case, it defeats the plaintiff's right to recover. Her right must have been a personal one, for it is difficult to see how she was entitled to receive or recover the rents as a trustee for the personal representatives, or for the testator's creditors, and not being in any sense a wrong-doer in receiving the rents, she cannot be held liable as a trustee *in invitum.*

It is illogical to say that rents which were hers alone, and which she alone could have recovered by action, can be recovered of her, unless by virtue of some promise, expressed or implied, or by virtue of some statute. *Lent* v. *Howard* (89 N. Y., 169) is not an authority for the position that rents which a devisee or heir is entitled to collect before the execution of a power of sale may be recovered of him by the executor. On the contrary, the case holds that the executor's right to the rents arose from the fact that the realty was, by the will, converted into personalty at the testator's death. The executors, and not the heir or devisee, in that case, received the rents and profits, and it was held that they must account for them as assets, upon the theory that they arose from personalty. No case has been cited holding that when realty is by a will absolutely converted into money at the testator's death, the heir or residuary devisee is entitled to possession and to the rents, until the land is actually conveyed under the power in the will.

We are not considering cases in which the time for the conversion is postponed until some period after the testator's death, or of the rights of heirs or of devisees to the intermediate rents in such cases. When the owner legally directs that upon the happening of an event, or at a time specified, his land shall be converted into, and treated as money, the courts of equity, by a convenient fiction, hold that upon the happening of the event, or the arrival of the time, the land becomes money, and is subject to the rules of law governing money, and ceases to be subject to the rules of law applicable to real estate. If the will absolutely converted the realty into personalty at the testator's death, the executor, and not the devisee, was entitled to its possession, and to recover the rents and profits, notwithstanding the section of the statute quoted. Disregarding the effect of this concession, we are led to examine the plaintiff's claim that the judgment is sustainable upon both, or upon either of the following grounds : First. That the devisee having accepted the devise and taken the rents, the law implies a promise, or liability on her part to pay all the testator's debts. Second. That, under the will, the realty was, at the testator's death, absolutely converted into personalty, and the rents, as well as the principal, are assets, and applicable to the payment of the testator's debts. Can the judgment be supported on the first ground ? That the will does not expressly charge Mary E. Moses with the duty of personally paying the testator's debts, and that the devise to her is not, in terms upon the condition that she shall pay his debts, is so obvious that it cannot be made plainer by discussion. As bearing upon this ground of liability, the question whether the will charges the testator's debts upon his real estate, was much debated by counsel upon the argument. Had the testator's estate been solvent, and but partly disposed of by the will, or had the estate been divided by the will between several persons, it might be important to determine whether he intended to charge his real estate, or some part of it, with the payment of his debts; but as the estate is insolvent, and there is no conflict between those named as beneficiaries, it seems wholly unnecessary to consider this question, for, under the statutes, the debts are charged, and become a general lien upon the whole estate, and the burden upon the realty, or the personal liability of the devisee for the testator's debts would not be increased, though

the debts were by the will specifically charged upon the realty. By statute (Code Civil Pro., § 1843) a devisee is liable for the testator's debts to the extent of property received by him, but beyond this he does not become personally liable by merely accepting of the devise and of the rents and profits thereof, though the devise is charged with the debts, unless the will charges the devisee with the duty of personally paying the debts, or unless the devise is upon the condition that the devisee pays the debts. (*Cronkhite* v. *Cronkhite*, 1 T. & C., 266; *Wheeler* v. *Lester*, 1 Bradf., 213, 293; Pom. Eq. Jur., § 1246, note; 2 Redf. Wills [3d ed.], 304.) The position that when a testator expressly charges all of his property with the payment of his debts, and then devises and bequeaths the residuum, that the residuary legatee and devisee becomes personally liable to pay all the testator's debts by simply taking possession of the realty and enjoying the use thereof until it is applied to the payment of the debts, is without support in reason or in authority. Neither can the devisee, in such a case be compelled to account for the rents, issues or profits received from the realty. (See authorities cited in support of the first proposition in this opinion.)

Grantees of lands, subject to specific liens enumerated in the grant, are not personally bound to pay the liens, though they form part of the consideration for the grant. (*Belmont* v. *Coman*, 22 N Y., 438; *Binsse* v. *Paige*, 1 Abb. Ct. App. Dec., 138; 1 Keyes, 87.) Persons who are vested with the legal title to, and by virtue thereof are in possession of real estate charged with specific liens, are not accountable for the use enjoyed, or for the rents collected before the title is divested by a sale. If creditors wish to cut off the right to enjoy the use and rents, which is incident to possession under a legal title, they must intercept the rents and profits, while enforcing their liens, by the aid of a receiver. In such cases creditors cannot lie by until after the title is divested and then compel its late owner to pay over the rents which he has received, or the profits earned by his management and care of the property. (*Hollenbeck* v. *Donnell*, 94 N. Y., 347; *Hamilton* v. *Austin*, 36 Hun, 143; Jones Mort., §§ 670, 1120, 1659.)

We know of no authorities holding that the rights of creditors having general liens are superior in these respects to those of creditors having specific liens. The conclusion of law (the ninth),

that under the will, Mrs. Moses became personally liable to pay all of the testator's debts by receiving the rents, cannot be sustained, and her exception to this conclusion is valid.

Was the realty converted by the will into personalty at the testator's death? When a testator directs that his real estate must be sold and converted into money, for all purposes, it is called "a conversion out and out." (3 Redf. Wills [3d ed.], 140.) This will does not direct that the real estate shall be sold, but simply empowers the testator's executors to mortgage or sell; not for all purposes, but solely for the purpose of paying his debts and legacies, and a technical conversion out and out is not effected. But the more important question is: Was the realty converted into personalty by the will for the purpose of paying debts and legacies? The will not containing an imperative direction for the sale of the realty, or for treating it as personalty, a conversion is not effected unless it clearly appears that it was the intention of the testator to effect a conversion. It cannot be contended that the testator intended a conversion of his real estate for the purpose of paying pecuniary legacies, aggregating but $300. Nor does it appear that the testator contemplated a sale of all of his real estate for the purpose of paying his debts, as his executors are expressly authorized to mortgage his realty for this purpose. We are unable to conclude from the provisions of the will that it was the clear intent of the testator to effect a conversion.

But a single fact outside of the will is relied on for the purpose of aiding the court to infer an intention to effect a conversion, which is, that after the testator's death, which occurred eighteen months after the date of the will, he was found to be insolvent. From this fact the trial court found that the testator was "probably" insolvent when he executed the will. (Ninth finding of fact.) The court did not find that the testator knew that he was insolvent when he executed it, and there is no evidence to support such a finding unless it should be inferred from the situation in which the estate was found after his death. If he was insolvent when he made the will, but was unaware of it, it affords no guide to his intention; and so we are left to gather the testator's intention from his will.

To effect a conversion of realty into personalty, in the absence of

a direction that a sale must be made in any event, it must clearly appear that the testator intended a conversion. ( *White* v. *Howard*, 46 N. Y., 144, 162; *In the Matter of the Will of Fox*, 52 N. Y., 530, 537; affirmed, 94 U. S., 315; *Hobson* v. *Hale*, 95 N. Y., 588.)

In *Hood* v. *Hood* (85 N. Y., 561) and *Lent* v. *Howard* (89 N. Y., 169), power to sell was conferred upon the executors, who were directed, after paying debts and legacies, to invest the residuum in securities for specific purposes, which could not have been accomplished without a conversion of the realty into personalty, and it was held that the testators must have necessarily intended a conversion. In *Moncrief* v. *Ross* (50 N. Y., 431) and *Fisher* v. v. *Banta* (66 N. Y., 468), a sale of the realty was directed. In *Phelps* *Phelps* (28 Barb., 121); S. C., *Dodge, Executor,* v. *Pond* 23 N. Y., 69), after paying the debts, about a million aud a half of dollars were devised and bequeathed, and the residuum, about $250,000, was directed to be divided into as many parts as the testator should have children and grandchildren living at a certain time after his death, or upon the happening of a certain event. The testator's real estate was situated in five different States. At the time of his death he had five children and twenty-two grandchildren, and when the time for distribution arrived the number of his grandchildren had increased. It was held in the Supreme Court that the circumstances justified the conclusion that the conversion was intended. This, however, was not the principal question involved, and in the Court of Appeals (where the judgment was modified) it was remarked that it was not very material to determine whether the realty was converted into personalty, and then the opinion was expressed that a conversion was intended. In *Hobson* v. *Hall* (*supra*) the Court of Appeals analyzed and discussed, at considerable length, the leading English and American cases turning upon the question of conversion, and, if we correctly understand that case, it is decisive against the position of the plaintiff, that a conversion was effected. We have been cited to no case holding that authority conferred upon executors to mortgage or sell solely for the purpose of paying debts (which is the effect of this power, as the legacies amount to but $300) works a conversion of the realty into personalty as of the date of the testator's death.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment reversed and a new trial granted, costs to abide the event.