# FIRST DEPARTMENT.

## GENERAL TERM, JULY, 1874.

BOYD, appellant, v. DE LA MONTAGNIE.

*Mistake and fraud — assignment by wife to husband.*

A husband bought shares in a steamship and paid the purchase-price partly with his wife's money and partly with his own money. The contract of purchase was taken in his own name, but the title was transferred in the name of the wife. The steamship contracted debts; but the wife was not liable for their payment. The husband, however, expressed his opinion to her that she and her property were liable for the payment of the debts, and showed her a letter from his brother, who thought an attempt would be made to collect the debts from her. The wife thereupon, for the consideration of one dollar, assigned certain property of hers to ·the husband, through a third person, she believing from her husband's representations that it would be more secure in his hands. Before the assignment the wife had made a will devising the property· to her husband. Subsequent to the assignment the husband and wife became estranged, and she brought an action against the husband to have the assignment annulled. *Held,* that she was entitled to the relief demanded, on the ground of fraud and mistake.

APPEAL by plaintiff from a judgment in favor of defendant. The action was brought by Caroline C. De La Montagnie against John De La Montagnie, the plaintiff's husband, to annul certain assignments of leasehold estate. The opinion states the case. After the appeal was taken the plaintiff died, and the action was continued in the name of Wm. L. Boyd, her executor.

*Martin & Smith,* for appellant. The transfer was made by the wife under an entire misapprehension. Taylor on Evidence, vol. 1, 6th ed., § 129 ; *Whelan* v. *Whelan,* 3 Cow. 537 ; *Gee* v. *Spencer,* 1 Vernon, 32 ; *Young* v. *Peachy,* 2 Atk. 255 ; Willard's Eq. Jur.

169, 170; *Sears* v. *Shafer*, 6 N. Y. 272 ; 1 Story's Eq. Jur., §§ 307, 308; *Grigby* v. *Cox*, 1 Ves. Sr. 517; *Cooke* v. *Lamotte*, 15 Beav. 234, 239, 241 ; *Summers* v. *Griffiths*, 35 id. 27; *Hoghton* v. *Hoghton*, 15 id. 278 *Davies* v. *Davies*, 2 New Rep. 384 ; *Coutts* v. *Acworth*, L. R., 8 Eq. 558–567 ; *Gibson* v. *Jeyes*, 6 Ves. 266, 276. It is no answer that the transfer was made by the wife in fraud of creditors. *Freelove* v. *Cole*, 41 Barb. 318 ; S. C., 41 N. Y. 619; *Ford* v. *Harrington*, 16 id. 285 ; *Osborne* v. *Williams*, 18 Ves. 379.

*E. W. Stoughton* and *A. L. Brown*, for respondent.

DANIELS, J. This action was brought by Caroline De La Montagnie, the defendant's wife, to annul the assignments made of a leasehold estate by her to A. Oakey Hall, and from him to the defendant. She intermarried with the defendant in December, 1847, and they lived together as husband and wife, until the year 1860. No formal separation then or afterward took place, but it is plain from the evidence that the preceding ardor of his affection for his wife after that time very sensibly declined until the present action was commenced, in 1867. Since that time their relations were hostile and unfriendly up to the time of her decease, which occurred after the recovery of the judgment and taking the appeal in this action. According to her letters, forming a portion of the case, she continued to regard the defendant with affection and esteem, up to the year 1866.

On the 23d day of September, 1851, the assignments of the leasehold estate were executed, which it was the primary object of this action to annul and set aside. After that time the lease was renewed to the defendant, and he has received and enjoyed the rents and profits of the premises ever since the assignments were made. They were each made for the nominal consideration of one dollar, and constituted a gift of the estate by the wife to her husband. The learned judge presiding at the trial found that the gift proceeded from the love and affection which she entertained for her husband, but the statement that such was the consideration, either wholly or partially, the evidence showed, and the judge found, was omitted from the assignments by the express direction of the wife herself.

Before the assignments were made the relations existing between herself and her husband were very affectionate and confiding in their character ; and there is nothing in the evidence from which it can

be inferred that there was the least simulation in that respect on the part of the husband. It was claimed that the subsequent subsidence of his affection warranted and, indeed, required such an inference. But as that seems to have happened quite a number of years after the assignments of the estate, no such conclusion can properly be drawn from that circumstance. There is nothing in the case involving the genuineness of his affection for her in doubt at the time when the estate was assigned, or for several years after that time. Before the assignments of the leasehold estate she made a will devising that estate to her husband, and then designed he should receive it in that way. And both her own evidence and that given by the defendant as witnesses in the case, contain no indication that she intended he should become the recipient of the estate in any other way until near the time when the assignments were made. And if no change had been produced through the agency of the defendant in her intentions, there is no reason for supposing that he would ever have received the title to the estate in any other way. For that reason it is probable that their subsequent estrangement would have deprived him of the estate altogether if his only chance of receiving it had been confined to the will of his wife; for after such an event she not only probably would, but actually did, change her will so as to give what property she had the power to dispose of an entirely different direction. It may therefore be safely and properly assumed that if the husband had not received the estate as he did, that he probably would never have received it at all. For no other circumstance arose after the assignments were made, from which it can be inferred that she would have voluntarily parted with it in his favor. And she seems to have been restrained by fear of the censure of her friends from disposing of it in his favor during the period of her life without the existence of some cogent reason requiring that to be done. They had opposed her marriage, and as the defendant was nearly twenty years younger than herself, they seem to have suspected that her property was the motive leading to it upon the part of the defendant. And she seemed anxious to avoid what might confirm the propriety of that suspicion. It is highly probable, therefore, that the defendant never would have received the title to the estate, if that had not been acquired by means of the assignments. For that reason the validity of his title must depend upon the circumstances whether they can be equitably maintained against the claim which was made to the estate by his wife.

The evidence showed, and the judge found the fact as proved, that in May, 1850, the defendant, while in the State of California, bought two shares in the steamer called Gold Hunter, and paid the purchase price partly by money sent him by his wife and partly by money supplied by himself. The contract of purchase was taken in his own name and for his own account, but the title, so far as it was taken, was transferred in the name of his wife. By August of that year the adventure in which the steamer was engaged proved to be a failure, and debts existed against the persons engaged in it to a considerable amount; but the defendant's wife was not liable for their payment, either directly or by means of their being chargeable upon the property owned by her. The defendant, however, exhibited a letter to her from his brother, who thought an attempt would be made to collect the debts from her, and containing the expression of apprehension upon that subject; and the defendant himself also expressed his opinion, or apprehension, to her that she and her property were liable for the payment of those debts.

These seem to have been her only sources of information upon the subject of the liability of herself and her property for the payment of those debts; and from what was communicated to her in that manner, she believed that herself and her property were liable for the payment of such debts, and that if she assigned the lease to the defendant it would be more secure in his hands than her own, and might, at least, delay the creditors; and she executed the assignment made by her under that belief. That conviction seems to have changed her purpose as to the time of transferring the lease, and induced her to do so by means of the assignments, instead of leaving her purpose, that her husband should ultimately have the lease, dependent upon the provision made by her will. These facts are sustained by the evidence, and in substance were found by the judge before whom the trial was had. Besides that, in 1860, she asked the defendant for a re-assignment of the lease, or to assign her the renewal of the term taken by him, and he promised to comply with the request, but stated that he would take his own time for it. This circumstance is not entirely consistent with the conclusion that by the transfer it was designed that the defendant should become the absolute owner of the estate. For if that had been the intention he would have insisted upon his title, instead of promising the surrender or return of it again to his wife. But it is not necessary, in the disposition of the case, to determine which

conclusion is the most probable; for it very clearly appears that she was induced to part with the title to the estate by means of the conviction produced in her mind, by the representations made to her, that both herself and her property were liable for the debts contracted in the adventure of the "Gold Hunter;" and that by making the assignments she hoped to delay and embarrass the creditors, and perhaps save her property. This purpose was not expressed to the counsel who drew the assignments, and it was not necessary that it should be, as long as its existence and the representations producing it so clearly appear from the evidence of the parties themselves, and both have been found as facts by the judge.

These representations were untrue, and they produced a false impression in the mind of the wife, inducing her to part with an estate which she would have otherwise continued to own until after all disposition to bestow it upon the defendant had ceased to exist. And that, under the well-settled principles of equity, was sufficient to render the assignments invalid, both upon the ground of mistake and fraud. The general rules upon that subject are that — "An act done, or contract made, under a mistake or ignorance of a material fact, is voidable and relievable in equity." 1 Story's Eq. Jur. (9th ed.), § 140. "The fact may be unknown to both parties, or it may be known to one party and unknown to the other. In the latter case it will sometimes afford a solid ground for relief, as where it operates as a surprise or fraud upon the other party. But in all such cases the ground of relief is not the mistake or ignorance of material facts alone, but the unconscientious advantage taken of the party by the concealment of them." Id., § 147.

It was not found that the defendant knew the representations made by him to his wife to be untrue. But, where such a relation exists as did between these parties, that is not necessary to constitute a fraud which courts of equity will relieve parties from the consequences of. For in equity fraud may be committed by "acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed," which are injurious to another, "or by which an undue and unconscientious advantage is taken of another." Id., § 187. Where the relations of attorney and client, guardian and ward, principal and agent, husband and wife, and other similar confidential cases, exist, "the law, in order to prevent undue advantage from the unlimited confidence, affection, or sense of duty, which the relation naturally creates, requires

Boyd v. De La Montagnie.

the utmost degree of good faith in all transactions between the parties. If there is any misrepresentation or any concealment of a material fact, or any just suspicion of artifice or undue influence, courts of equity will interpose and pronounce the transaction void, and, as far as possible, restore the parties to their original rights." Id., § 218; *Sears* v. *Shafer*, 6 N. Y. 268, 272; *Jaques* v. *Methodist Church, etc.,* 17 Johns. 548; *Fry* v. *Fry,* 7 Paige, 451.

The facts proved and found clearly bring the present case within these principles. And from the confidential relations existing between the parties at the time, entitled the wife to be relieved from the consequences of the transfer made by her of her estate, although the leading motive inducing it was improper and unlawful. She acted under the influence of the misrepresentations made to her by and through the agency of the defendant as her husband. And as she then confided fully in his statements it was perfectly natural that she should yield her property to what was then regarded as the chance of its only safety. The law will not permit him to profit by an apparent advantage secured in that way, because it regards her, under the circumstances shown, as acting under his controlling and governing influence.

Under this presumption a client has been relieved from the effect of his act in transferring his property to his attorney in order to avoid the rights of his creditors; and that was done for the reason that the relations existing between the parties required the application of the general equitable principles already mentioned. *Ford* v. *Harrington,* 16 N. Y. 285. The present case is within the spirit of that authority. Instead of being denied relief, the facts proved required that judgment should be pronounced in favor of the wife.

The statute of limitations was not applicable to the case, because of the coverture of the plaintiff and the continued absence of the defendant from the State. No facts were found, and the evidence proved none, rendering that defense a proper one.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

*Judgment reversed and new trial ordered.*