Danforth, J.
[After stating the facts.]—The appeal by the defendants is to be first considered. It brings up for review the decision of the general term reversing the judgment of the special term, and granting a new trial upon questions of fact. We are therefore to examine the evidence and determine the issues of fact *174 presented upon the trial (Godfrey v. Moses, 66 N. Y. 250). From this examination it appears that the defendant, George W. Nelson, had agreed to buy of one Herring some vacant lots in Brooklyn at the price of §45,000, and to obtain money to make the payments, applied to the plaintiffs for a loan upon that property as security. After oral negotiations with some of the officers of the company, in the course of which he offered to buy of it certain property called the Saugerties property, provided they would make the loan, he presented to the plaintiffs a written application for a loan of $70,000, at seven per cent., on his bond and mortgage upon the property above referred to, and now described in the complaint in this action. The loan was granted upon-an agreement, which was carried out as follows : The plaintiffs paid to Herring $45,000, and to George W. Nelson, or to his use, $5,000, retaining $20,000 “ to be applied to the purchase of the Saugerties property,” executed a deed of it to George W. Nelson, in which the consideration is stated to be $30,000 ; and he gave back the mortgages now in suit, and a mortgage upon the Saugerties property for $10,000, and Ruea Nelson, his father, for his accommodation and at his request, gave his bond to the plaintiffs, conditioned as above stated.
Was the sale and purchase of the Saugerties property and the $10,000 mortgage an honest and fair transaction, or was it a cover for usury 1 This question presents the points of the defendant’s appeal, and to it the evidence permits but one answer. We find that George W. Nelson, in the fall or winter of 1871, was the owner of the Saugerties property, and at that time procured from the plaintiffs a loan of $17,000 upon it. None of the principal was paid, interest accrued, and the plaintiffs foreclosed the mortgage. At the sale they purchased the property for $7,000, and on August 2, 1873, took a judgment against Nelson for the deficiency, *175 then amounting to $11,140.45. It was unpaid. As to the value of this property in October, 1874, there is little direct evidence, but it was unsalable at a price sufficient to reimburse the plaintiffs for the loan made by them in 1871. It was sold upon the first foreclosure for $7,000, and we find that upon a sale made upon the foreclosure of the $10,000 mortgage prior to the trial it produced less than $10,000, and was again bid in by the plaintiffs, leaving the defendant liable for a deficiency. It may be presumed that the property was advertised and sold in the usual manner, and in such a way as to produce a fair competition among persons actually attending the sale, and that each party interested did all in his power to procure bidders. There is no evidence that the property on either occasion was sacrificed. The price, therefore, at which it sold furnishes some evidence, although by no means conclusive, as to its value (Campbell v. Woodworth, 20 N. Y. 499 ; Gill v. McNamee, 42 Id. 44 ; Crounse v. Fitch, 1 Abb. Ct. App. Dec. 175).* There is further evidence. The defendant, George W. Nelson, testified that its full and fair value was $10,000. He was interested, and his opinion subject to bias, but he was qualified to express it, and competent as a witness. The plaintiffs made no objection to it upon the trial; no effort was made on cross-examination to ascertain the grounds of his opinion, or in any respect to diminish its weight. It seems to have been accepted as correct. It is impossible to account - for the conduct of the plaintiffs on the trial upon any other hypothesis. The question to which his evidence was addressed was a vital one, and it is a fact of great significance that no testimony was offered by the plaintiffs in answer to it. There was nothing to *176 detract from its force, and credit should therefore be given to it* (Byrd v. Hall, 1 Abb. Ct. App. Dec. 285). The inference warranted by the actual sales concurs with the testimony of the witness. We find, also, that the omission of the plaintiffs to give evidence upon this point was not from inadvertence. Mr. Johnson was counsel for the plaintiffs at the time of both loans. He was a large stockholder in the company, a member of the finance committee, director, and one of three of the executive committee, especially charged with the conduct of the loan in question. Upon the first occasion he visited the property, made inquiries in regard to it, and was informed “that a loan of $17,000 was too heavy for it.” During the examination of George W. Nelson, he had produced a paper in his own handwriting, prepared by himself and signed by Nelson, by which the latter requested him to apply $20,000 of the $70,000 loan, “ to the purchase of the Saugerties property.” He was introduced by the plaintiffs as their witness, and upon cross-examination by the defendants’ counsel his attention was called to that paper and the item, and he was asked, “You did not consider this property at .Saugerties worth $20,000, did you?” He replied, “ I did, to any one who wanted it.” The real valqe. was the measure which the question called for, and it was not given. I conclude, then, that the plaintiffs were unable to increase the estimate of value put upon the property by the defendant, and we are to determine it upon evidence which is not even conflicting. The testimony of the defendant, the two sales, the silence of the plaintiffs under such great provocation and with abundant opportunity to know and express the truth, their omission to relieve the case of the pressure placed upon it by the uncontradicted evi *177 dence, brings us to the conclusion reached by the learned trial judge, “ that the value of the Saugerties property did not exceed $10,000.”
Notwithstanding this, however, if the agreement was that the defendant should take the Saugerties property off the plaintiffs’hands at such price as would restore them the loan made in 1871, however hard the performance, the defendant would have no legal ground of complaint. But this was not the contract or the purpose of the plaintiffs ; for that $20,000 would have been ample; but the price insisted upon was $30,000. It was so stated in the deed. All of it was paid or secured—$20,000 in money, $10,000 by mortgage. It is true that the proposition to take the property came from Nelson, but that is immaterial. It resulted in a contract in which the minds of both parties met, and it is obvious that the proposition was made by the defendant and accepted by the plaintiffs for no other purpose than to provide a way by which the defendant should obtain a loan and the plaintiffs compensation beyond lawful interest. This was well understood by the plaintiffs. It ran through the entire negotiation; the two things were inseparably connected. The plaintiffs would make no loan without a sale. The defendant would not buy without the loan. The purchase of the Saugerties property was at an exorbitant rate, disadvantageous to the borrower and beneficial to the lender. It was forced into the contract and the case brought within the statute.
The evidence on either side establishes this ; according to the plaintiffs’ witness an application was first made for a loan upon the Brooklyn property, and the defendant told by its officer that he did not think it would be granted, because the property was unimproved, but he suggested to Mr. Nelson “if he had any proposition to make to submit it to the company.” He subsequently told the president he wanted a loan oí *178 $50,000, and if the company would make it he would buy back the Saugerties property at $20,000 and make the two transactions together. He was referred to Mr. Johnson. Both have been examined, and there is little difference in their testimony upon this point. Nelson says: “I told Johnson I would give $20,000 for the property, provided they would make me this loan of $50,000.” He replied At what they bid it off and the deficiency against me, and the interest and costs, would make it over $20,000, but said he would talk with his folks.” Johnson states the conversation somewhat at length. He says that two or three weeks ofter the first interview, “George Nelson came in, told me that he had conversed with some of the officers of the company in regard to a loan, that he wanted to get the Saugerties property back again, and if the company would satisfy the judgment for deficiency against him and reconvey the Saugerties property to him, he would give $30,000, conditioned on the company’s making a loan of $70,000 on this property in Brooklyn, and would pay $20,000 of the loan toward the purchase of the Saugerties property, the balance to be secured by-a mortgage of $10,000.” Other interviews were had with the officers of the company, but none unlike those stated ; in all the proposition to buy was coupled with the condition for a loan—and while $20,000 was refused $30,000 was accepted as the price to be paid, and Nelson was informed that the matter was in the hands of a committee, consisting of Nichols, the president, Johnson and Studwell. Nelson states the negotiation very plainly. At the second interview with Nichols, the president, he says: “I told him I would give ,thenr$10,000 bonus- if they would make this transaction, a'nd to cover it up so they would not be troubled, they might reserve $20,000 for the’ purchase of the Saugerties property and take a mortgage on it for the $10,000 bonus.” And the “deed he made for $30,000 *179 instead of §20,000.” And it is plain from the evidence that he was given to understand that the §20,000 included the deficiency judgment and the price paid in the foreclosure for the property. This is bluntly stated by the witness, but every act of the parties and much of the plaintiffs’ testimony confirms him. The trial judge asked the witness Nelson: “ Tell me about the §10,000 mortgage—what was it given for?” He answered, “Given for a bonus to induce them to make the transaction.” The judge asked the same question of Johnson. “ What do you say the $10,000 mortgage was given for ?” He answered, “ The judgment for deficiency and the cost of the property exceeded at the time $20,000, it was his own proposition.” This means, as I understand it, that the cost of the property to the plaintiffs, viz., $7,000, the sum paid on foreclosure and the deficiency judgment of §11,140.65, beside interest, and seems to have been intended by the witness and understood by the trial judge, for the next question was, “ Now you got §10,000 more than that ?” Answer, “Yes.” Question, “What do you say it was for?” Answer, “It was the proposition of George Nelson to pay §30,000 for the property, and he asked the company for this loan to enable him to do so.” The examination is then renewed by plaintiff’s counsel, who says: “The consideration expressed in the deed is §30,000.” Answer, “ Yes.” And upon cross-examination he says the mortgage was given to secure the balance of the purchase-money, “and was to be given as a part of the arrangement that a deed was to be given.” Stud well, the other member of the executive committee having charge of this loan, says: “ George said he would give §30,000 for it,”—the Saugerties property. “He would not have got the loan unless we had got the mortgage back.” Mr. Nichols, the president, says : “ The offer in substance was, they would take the Saugerties property—they would buy *180 the Saugerties property at $20,000. I declined- to consider the matter at all.” Question, “ There was a $10,000 mortgage given on the Saugerties property, do you recollect what it was, how it arose?” Answer, “ In the course of negotiations the offer for the Saugerties property was advanced to $30,000.” There is other testimony, but all has the same tendency.
It has been said and reiterated by the courts from the time the schemes and contrivances of lenders became the subject of judicial examination, that there is no contrivance whatever by which a man can cover usury (Jestone v. Brooks, 2 Cowp. 793), and that no subterfuge shall be permitted to conceal it from the law (Dewolf v. Johnson, 10 Wheat. 385), yet- if this agreement can stand it will require no wit or subtlety to circumvent the statute. The case is a very plain one; the transaction relating to the Saugerties property was a mere device, an attempt to evade the statute relating to usury. The judgment of the general term, therefore, which reversed the judgment of the special term and granted a new trial, should be reversed.
The first question presented by the plaintiff’s appeal relates to the correctness of the order permitting the defendant, Nelson, to amend his answer. By it he was allowed to set up a conveyance to himself from the defendant, Watkins, of the premises described in the complaint, coupled with a statement that the interest so conveyed is the same as that theretofore conveyed by the said George W. Nelson to Felix Leinback, Augustus W olle and Simon E. Pettee, and by those persons conveyed to Charles M. Watkins. The order, for aught that appears, was made upon notice, or notice was waived ; it was made, as it recites, on motion, and after hearing counsel for both parties, and though called an amendment may be regarded as a supplemental answer. It does not appear that any objection was made at special term either to its form or upon its *181 merits. It was one, however, within the power of the trial court to make, and it does not appear that the power was improperly exercised.*
The plaintiff’s appeal from the judgment of November 23d, 1878, requires us to consider the effect of the deed executed by George W. Nelson to Leinback and others, and the final conveyance set up in the amended answer ; and first, it is clear that neither Leinback and his associates, the grantees of Nelson or Watkins, to whom they conveyed, could successfully interpose the defense of usury; but that is because they purchased the equity of redemption only, subject to the lien of the mortgage (Green v. Kemp, 13 Mass. 518). The rule declared in the case cited has been repeatedly followed, and must now be deemed firmly established. It stands upon the fact that such a purchaser acquires only the right to redeem, and upon the principle that if he will not avail himself of this right he cannot hold the land; and, having no title in the land, cannot be *182 permitted to avoid the mortgage by plea or proof of usury (Shufelt v. Shufelt, 9 Paige, 145, and Post v. Dart, 8 Paige, 369 ; Morris v. Floyd, 5 Barb. 130; Sands v. Church, 6 N. Y. 347); “for as to so much of the property which is necessary to satisfy such liens he is not in privity in estate with the borrower for so much of the property is not assigned or granted to him.” This is the statement of the reason of the rule by Jones, J., referred to in the opinion of this court in Mechanics’ Exchange Bank v. Commercial Warehouse Company (49 N. Y. 642). It is also stated to the same effect, though in a different manner, by the supreme court of the United States in De Wolf v. Johnson (10 Wheat. 369), where they say that “a contrary rule would hold out no relief to the borrower; it would be only transferring his money from the pocket of the lender to the pocket of the holder of the equity of redemption.” This remark is quoted with approval in Sands v. Church (6 N. Y. 355), where, holding that the defense was unavailing to such a purchaser, the ■ court says: “ He had made a valid contract and for a valuable consideration, that so far as he owned or was interested in the mortgaged premises he would hold subject to the payment of the debt. It would be contrary to equity to allow him to avoid jts payment. It would be discharging him from the obligation and leaving the mortgagor still liable. It would be releas-. ing the land from the incumbrance when he had agreed that it should be subject to itand upon this ground of contract was placed the decision of the court.
The rule can have no application to the defense when interposed by the mortgagor and borrower. The entire estate is now his, subject to no covenant and bound by no contract. His grantees were never under any personal obligation to pay off the mortgage ; they .had not assumed it (Belmont v. Cowan, 22 N. Y. 438 ; Dingeldein v. Third Avenue R. R. Co., 37 Id. 575). *183 Doubtless Nelson, the mortgagor and grantor, might have compelled payment from the land while it was in the hands of his grantees, but he did not do it. Whether the plaintiffs might have, by proper proceedings, subjected the land while in the hand of the mortgagor’ s grantees to the payment of the debt it is not necessary to inquire, for such proceedings were not taken. The present suit was not brought for, nor is it adapted to, that purpose. The complaint contains allegations usual inactions of foreclosure, and no others. The plaintiffs seek to recover on the ground of default on the part of the obligor and mortgagor in making payment according to the condition of the bond and mortgage, and asks no relief upon the ground that by any arrangement between the mortgagor and his grantees the land had been subjected to the payment of the mortgage debt. I do not say that it would help the plaintiffs to have done so, but nothing short of some act on their part, indicating their acceptance of the benefit of the implied covenant entered into between Nelson and Leinback and others, would suffice ; perhaps that would not.
The question does not arise here and is not to be decided, for nothing was done or attempted by the plaintiffs which raises the question. The various grantees of the mortgaged premises are made parties simply as persons who had acquired an interest in the premises subsequent to the mortgage.* This is not sufficient; the suit is upon the various mortgages themselves—not upon any new contract; and the plaintiffs are in no better or different condition than they would have been if the title to the land had remained at all times in Nelson. Hatfield v. Newton (3 Sandf. Ch. 615), is in point upon this question, and was well decided. It is there held that where the de *184 fense of usury is interposed to the foreclosure of a mortgage by the purchaser of the equity of redemption, the complainant cannot overcome it by proof that the lands were conveyed subject to the mortgage, unless his bill sets forth the execution and terms of such conveyance. The commencement of the suit, then, was no.t an act of the plaintiff, accepting the benefit, if any there was, of the provisions of the deed from Nelson to Lienback, &c., or from them to Watkins. Of course the Us pendens could have no greater effect. It was quite unimportant so far as Nelson is concerned, for he had actual notice of every fact which could be properly stated in the Us pendens, and would have been equally bound although none had been filed. • It could only be deemed to give him constructive notice, whereas, both as a debtor and as party to the suit, he had actual notice of every fact which the notice could contain.* Neither the conveyance by Nelson nor the declaration subjecting the land to the mortgages was made for the benefit of the plaintiffs, nor were they in any sense privy to the contract or the consideration. Nelson intended to benefit himself, and the consideration was wholly between himself and his grantees. The declaration made the land the primary fund for the payment of the mortgages ; that is, primary as between Nelson’s liability on the bond and the land. It was as if Nelson had placed so much money in the hands of his grantees to be applied upon the mortgages; the obligation on the part of the grantees of the land was to hold it for the indemnity of Nelson.† The plaintiffs had no knowledge of this, did not assent to it, nor were they the parties intended to *185 be benefited; it was in the power, therefore, of the grantor and mortgagor to so change the relation that the obligation on the part of his grantees should be canceled and the dedication of the land to the payment of the mortgages revoked (Simson v. Brown, 68 N. Y. 355 ; Merrill v. Greene, 55 Id. 270; Kelly v. Roberts, 40 Id. 432 ; Thorpe v. Keokuk Coal Co., 48 Id: 253).*
The forcible and significant inquiry made by the learned Judge James in Kelly v. Roberts, supra, and the conclusion of the court therein, apply with great force to the question now in hand.† The effect of the *186 conveyance by Watkins to Nelson was to vest in him so much interest in the land as the former had acquired. Nelson had then a perfect title to the property and a right to interpose the defense of usury in like manner as if he had never parted with the equity of redemption. Hartley v. Harrison (24 N. Y. 173), is not to the contrary. In that case the mortgaged premises were declared subject to the usurious mortgages, and so remained in the hands of the grantee who had also assumed its payment. It was held that to him the defense of usury was not available, and for the reason that if it was he would thus “ obtain an interest in the lands which the mortgagor never agreed or intended to transfer to him,” and, as stated by Wood-ruff, J., in Cope v. Wheeler (41 N. Y. 315): “This would be not because the mortgage was not usurious and void as between the parties thereto, but because he was not at liberty to use that as a defense, having retained in his hands the amount.” In that case it appears that one Elizabeth Cravey mortgaged certain lands to secure an usurious loan of $1,000, and afterward conveyed the mortgaged premises to one Huntington, subject to the mortgage, and $1,000 was deducted from the purchase price in consequence of the mortgage. In a controversy concerning certain surplus moneys, the question of validity of this mortgage became material, and the court say, “ The conditional sale to Huntington was not a confirmation of the original. An usurious contract, while it remains ex-ecutory, is wholly incapable of confirmation, and although the deed to Huntington was such a waiver as enabled the defendant as against Huntington to enforce the mortgage against the land, if he chose, yet as against the borrower himself the waiver was of no force; so that hád these Wisconsin lands afterwards become the property of the plaintiffs by conveyance from Huntington, this mortgage remaining unpaid, *187 the defense would have been available to them against its enforcement.”
The case of Schermerhorn v. Talman (14 N. Y. 93), has no application. In that case the obligation of the defendant had been discharged in bankruptcy. This property, including the premises in question, had passed to the assignee. From him he acquired a new title, but wras under no obligation to pay the debt for which the land was mortgaged. He had ceased to be the borrower, he was a purchaser.
In the case before us Nelson has at all times been liable for the debt, and he had always had an interest in the property to the amount of the usurious mortgage. The plaintiffs proceeded against him as a debtor, and against the land, because of his mortgage to secure the debt.
Upon principle and authority the judgment appealed from by the plaintiff is correct.
The order and judgment of the general term, entered on the 22d day of May, 1878, in the office of the clerk of Kings county, reversing the judgment of the special term in this action and granting a new trial, should be reversed, a new trial denied, and the judgment of the special term, so far as appealed from by the plaintiffs, affirmed, with costs.
The order of the general term, entered in said office on the 30th day of September, 1878, affirming the order of the special term allowing the defendant Nelson to amend his answer, should be affirmed, with costs.
The judgment of the general term entered in said clerk’s office on the 23d day of November, 1878, should be affirmed, with costs.
All the judges concurred, except Andrews, J., absent.
Judgment accordingly.

 See also Lawton v. Chase, 108 Mass. 238; Roe v. Hanson, 5 Lans. 804; Dixon v. Buck, 4 Barb. 70; Graham v. Maitland, 6 Abb. Pr. N. S. 327; S. C., 37 How. Pr. 307; 1 Sweeny, 149.

 Stilwell v. Carpenter, 2 Abb. New Cas. 239, and cases cited in note; Moody v. Pell, Id. 274; Middagh v. Bigelow, 67 Barb. 106; Lynch v. Pine, 42 Super. Ct. (J. & S.) 11.

 The following is the portion of the opinion of Gilbep.t, J., at general term, relating to the point discussed above.
“ That the court has a discretionary power to allow a party to put in a supplemental answer in any stage of the action, I think is clear, both under the former and the present Code (Code of Pro. § 177; Code of Civ. Pro. § 544; Holyoke v. Adams, 59 N. Y. 233). That discretion is not an arbitrary one, but must be exercised in furtherance of justice, and the general term, no doubt, should reverse an order granting such relief, in a case where an abuse of that discretion is shown. It is not claimed that any such abuse occurred in this case, but only that the order was irregular in this: that an amendment of the original answer, instead of a supplemental answer, was put in. That is a defect in form only, and should be disregarded. The court has power, even at the present stage of the proceedings, to conform the pleadings to the facts proved (Code of Pro. §§ 173, 723). Besides, that ground of objection was not taken in the court below, and, for that reason, the objection is not available here (Hofheimer v. Campbell, 7 Lans. 160; S. C., 59 N. Y. 272; Murphy v. People, 63 Id. 594). The exception to the admission of the re-conveyance to George W. Nelson, in evidence, therefore, was properly overruled.”

 As to the eSect of this allegation, see Lewis v. Smith, 9 N. Y. 502; Frost v. Koon, 30 Id. 428; Merchants’ Bank v. Thomson, 55 Id. 11.

 See Holbrook v. New Jersey Zinc Co., 57 N. Y. 616; Becker v. Howard, 66 Id. 5; affi’g 4 Hun, 359; S. C., 6 Supm. Ct. [T. & C.) 603; and rev’g 47 How. Pr. 433.

 See Binsee v. Paige, 1 Abb. Ct. App. Dec. 138; Collins v. Rowe, 1 Abb. New Cas. 97; Cashman v. Henry, 5 Id. 330.

 Compare Devlin v. Murphy, 5 Abb. New Cas. 242; Ranney v. McMullen, Id. 246; Shepard v. Shepard, 7 Johns. Ch. 57; and see Russell v. Weinberg, 4 Abb. New Cas. 139; affi’g 2 Id. 422; Collins’ petition, 6 Id. 227; Loomis v. Balheimer, 5 Id. 263.

 The words of James, J., above referred to, are as follows: “The question presented, therefore, by this case, is whether a verbal agreement between creditor and debtor, upon no new consideration, that instead of paying the debt to the creditor, the debtor will pay it to a third person, the debtor himself having no interest in the question to whom the money shall be paid, is final and irrevocable by the creditor, although such third person has given no assent thereto, nor received any notice of such agreement. It is not enough to claim, in answer to this question, that the third person, on receiving notice thereof, may accept the promise and sue thereon, the original creditor still assenting. Cases which hold that if money be paid to A., to be paid over to B., the latter may sue for and recover the same, as money had and received to his use by A., do not answer this question.
“It would be a very liberal extension of these cases if it should be held that if A. hand money to his own servant or agent, with instructions ' to carry and deliver it to B., which the servant or agent agrees to do, such instructions are irrevocable, and, although A. should change his mind before his agent or servant sets out on his errand, he could not countermand the instructions, and take back his money. Until such instructions have been acted upon in some manner, the servant continues servant of A., and only his servant. So, where one hands money to his servant, agent, or friend, with a request that he visit the city and therewith pay a note due, or about to become due, can it be seriously questioned that if, before anything further is done, such one concludes to use the money for some other purpose, or to pay some other debt, he may do so ? I think not.”