### HARTLEY, Executor, &c., *v.* HARRISON *et al.*

Where land is conveyed subject to a usurious mortgage, which the grantee assumes to pay, the mortgagee acquires a right to an appropriation of the land for that purpose, which cannot be divested without his assent.

*Held*, accordingly, that a subsequent arrangement between the parties to the deed, whereby, as between them, it became a mere quitclaim, was inoperative to open the defense of usury to the grantee.

*Quære*, however, whether the personal liability assumed by the grantee is not discharged by the release of his grantor. So held in the Supreme Court, and the question not passed upon by this court.

APPEAL from the Supreme Court. Action for the foreclosure of three mortgages upon the same premises. The referee, before whom the cause was tried, found these facts: Two of the mortgages executed by Henry Harrison and wife to the plaintiff's testator, in regard to which alone any question was made in the case, were executed upon a usurious agreement for the loan of money. Subsequent to the execution of these mortgages, Henry Harrison and wife conveyed the land in fee to Joseph Harrison, by deed with warranty, containing, among other things, the following provision: "This conveyance is made subject to the payment of the said mortgages, which the party of the second part assumes and covenants to pay as a part of the purchase-money of the said premises." The grantor covenanted that the amount due on the three mortgages did not exceed a specified amount. After issue was joined in the cause the defendants, Henry and Joseph Harrison, intercharged releases to each other of the

covenants made by them respectively, and also covenanted that the agreement contained in the deed in respect to the mortgages was annulled, and that such conveyance should have the same effect as if such agreement was not contained therein. The referee held that the releases and covenant were inoperative to authorize the grantee of the land to avail himself of the defense of usury — that the relations of the parties to the premises which had been appropriated as the fund for the payment of the mortgage could not be changed without the assent of the plaintiff. He accordingly ordered judgment directing the sale of the land for the payment of the mortgages, but that neither Henry Harrison, the mortgagor, nor Joseph Harrison, his grantee, were personally liable for any deficiency that might arise upon the sale. The judgment having been affirmed at general term in the seventh district, the defendants appealed to this court.

*E. Peshine Smith*, for the appellants.

*John K. Porter*, for the respondent.

MASON, J.   The rule is a familiar one that when the owner of land mortgages it to secure the payment of a debt, and afterwards sells and conveys the equity of redemption subject to the lien of the mortgage, and the purchaser assumes the payment of the mortgage as a portion of the purchase-money, the latter becomes personally liable for the payment of the debt of the former to the holder of the mortgage. (*Russell* v. *Pistor and Wife*, 3 Seld., 171, 173, 174; *Halsey* v. *Read*, 9 Paige, 446; *Marsh* v. *Pike*, 10 Paige, 595, 597; *Cornell* v. *Prescott*, 2 Barb. S. C., 16; *Blyer* v. *Monhalland*, 2 Sandf. Ch., 478; *Ferris* v. *Crawford*, 2 Denio, 595.) The law is well settled in this state that the purchaser who takes a conveyance of the premises from the mortgagor, subject to the lien and payment of a mortgage, cannot set up the defense of usury against such mortgage and thus obtain an interest in the land which the mortgagor never agreed or intended to transfer to

Hartley *v.* Harrison.

him. (*Post* v. *Dart*, 8 Paige, 641; *Shufelt* v. *Shufelt*, 9 Paige, 145; *Cole* v. *Savage*, 10 Paige, 591; *Ferris* v. *Crawford*, 2 Denio, 598; *Morris* v. *Floyd*, 5 Barb., 130; *Sands* v. *Church*, 2 Seld., 347.) The principle upon which these proceed is, that the mortgagor may, if he thinks proper to do so, waive the usury and elect to affirm the mortgage by selling and conveying his property subject to the lien and payment of such mortgage, and the purchaser, in that case, takes the equity of redemption merely and cannot question the validity of the mortgage on ground of usury. It follows, therefore, that Joseph Harrison cannot set up this defense of usury unless the release of Henry Harrison to him, of the covenants and agreements contained in the deed to him executed after the issues in this cause were joined, shall be held to have the effect to discharge him from his liability and authorize him to assert this defense. Now, this release cannot have any such effect. Henry Harrison could not, upon any principle, release Joseph from the liability which he was under to the plaintiff in consequence of his taking a conveyance of the premises subject to the payment of this mortgage. His liability to the plaintiff was fixed the moment he received the conveyance, and it was not in the power of Henry Harrison to release him from it, and this land in his hands became the primary fund for the payments, and neither he himself nor Henry, so far as regards the plaintiff's rights, could discharge him from it or release the land from the lien of these mortgages. This liability when once created was irrevocable, and neither Henry nor Joseph could avoid it. (7 Paige, 615, 639, 640, 641; 5 Seld., 83; 2 Denio, 45; 4 id., 97.) If I am correct in the views above expressed, it follows that the judgment of the court below is correct and should be affirmed.

All the judges concurred in this result except COMSTOCK, Ch. J. They, however, disclaimed any intention to pass upon the question whether the releases were not valid and effectual to discharge the grantee, Joseph Harrison, from any personal liability to the mortgagee for the payment of the mortgages.

COMSTOCK, Ch. J. (Dissenting.) No judgment has been rendered in this case, affirming the personal liability of Joseph Harrison upon the covenant to pay the mortgage-debts in question, implied from his acceptance of a deed declaring that he assumed to pay them. It is unnecessary, therefore, to inquire whether his liability was discharged by the subsequent release from the grantor in that deed. I have no doubt that such was the effect of the release. Conceding, on the authority of the recent cases in this court, that the holder of the mort-gages might sue on the covenant in his own name, it is, never-theless, true that the mortgagor and grantor was the covenantee, and that the consideration proceeded wholly from him. Ac-cording to the plainest principles of law, he also could enforce it by action, could lawfully receive a satisfaction of it, and, by necessary consequence, could release and discharge it. But, as the point is not involved, it need not be further considered.

The conveyance in question was, in terms, subject to the prior mortgages. Two of those mortgages were proved to be usurious. Nevertheless, a judgment of foreclosure and sale has been pronounced in respect to all of them, on the ground that the land was so conveyed. This was correct, both on principle and authority, if no effect be given to the instrument afterwards executed by the mortgagor to his grantee. It was supposed by the referee, and by the Supreme Court, which affirmed his decision, that, where land is thus conveyed by a mortgagor, in terms subject to the usurious mortgage, the estate is irrevocably devoted to the payment of the debt, so that no subsequent grant of an absolute interest can affect the mortgagee's right. On this point, I am constrained to differ. A precise idea of the relations of the parties will lead to a correct solution of this question. Where land is mortgaged, and then granted expressly subject to the incumbrance, a mere equity of redemption only is conveyed. So much estate or interest as is necessary for the satisfaction of the mortgage, is not conveyed at all. This is so, whether the mortgage be valid or void. If valid, the interest not conveyed is in the mortgagee. If void, it is necessarily in the mortgagor. To

say that a void mortgage creates an interest, would be simply to utter a contradiction in terms. Before the conveyance, the mortgagor owns the whole estate, free of the pretended incumbrance. This is no more than that the law says, which declares the incumbrance utterly void. The mortgagor may, therefore, convey the whole estate, or a partial interest, as he pleases. If he sells only a partial interest, he may afterwards sell and convey the whole. If he first grants a mere equity of redemption, he may afterwards grant the residue; because it is his estate absolutely.

The reason why the grantee of land subject in terms to a usurious mortgage cannot defend against it is, that he is a stranger to the contract. He is not in privity, because he does not take the whole interest of the mortgagor. The deed in such a case reserves, or, rather, it does not grant, so much of the estate as is necessary to satisfy the debt. The mortgagee, therefore, has not the mortgagor's situation and rights. A stranger to a usurious contract cannot plead that defense. Such a contract is certainly void in all conceivable circumstances, and is totally incapable of confirmation. But a person unaffected by it in his person or estate, cannot raise the question. The grantee of a mere equity of redemption is in that situation. But if the mortgagor, after so conveying, gives a further assurance, in which he grants the entire estate, in disaffirmance of the void incumbrance, then a privity with the contract is established, and the defense may be interposed by the grantee. That the mortgagor may give successive conveyances of his land until he parts with a complete title, is a very simple proposition. Having a perfect title in spite of the void incumbrance, he may transfer it at such times and by as many assurances as he pleases.

It is sometimes said, that, when a mortgagor conveys in terms subject to the mortgage, he waives the usury. This is certainly true at the time, and in a certain sense. But if the meaning is, that such a deed has any legal efficacy between him and the usurious mortgagee which prevents him from recalling the supposed waiver and disaffirming the contract,

Hartley *v.* Harrison.

then the proposition is illogical and false. A borrower may say that he will not set up the usury, or put any one else in a situation to do it. If he persists in that determination, there is nothing in the way of the lender's proceeding upon his securities until he obtains such judgment as the nature of the case admits of. This, of course, is an effectual waiver. More accurately speaking, it is an omission to disaffirm the contract until it is too late. And there cannot be any other waiver. A usurious contract, while it remains executory, is wholly incapable of confirmation. All derivative obligations, all attempts of the borrower to affirm the contract, so long as the taint of usury remains, are nugatory. This is the language of all the authorities, and virtually of the statute itself.

It is said that the debtor may constitute a valid trust for the payment of a usurious demand, and that the trustee can be compelled to execute the trust and pay the debt. I do not stop to inquire how this may be. The proposition was explicitly denied in this court, in Morse *v.* Crofoot (4 Comst., 114, 122). Other authorities may affirm it. In principle I should say, that a trust created to pay a usurious debt is but a further assurance equally void with the original contract. But the question is not material. In this case, there is nothing which has the least resemblance to a trust. Nothing is more common than for a mortgagor to convey his land, subject to the mortgage. Is the grantee a trustee for the mortgagee? Such a doctrine was never before heard of. On the contrary, it has always been considered that the mortgagee, with a power of sale, is a trustee in a certain sense for the owner of the equity of redemption. A conveyance of land subject to a mortgage, is neither more nor less than a simple deed of whatever interest or estate the grantor has after the debt is satisfied out of it. The grantee may free the estate, by paying the incumbrance, or he may suffer it to be sold and take the surplus. He owes no duty, and is charged with no trust. This being confessedly so when the mortgage is a valid lien, it is for those who assert a trust in cases like the present, to show how usury or illegality of any kind can make a difference.

It is sometimes also loosely said that a grantee, subject to a mortgage, is *estopped* from setting up the usury. This is simply a misnomer, there is no estoppel in such a case. Certainly there is no estoppel *in pais*, because there are no facts to constitute it. There is none by deed, because a man cannot be estopped by deed from setting up usury if there be no other objection to the defense. An affirmation of the most solemn kind under hand and seal that no usury exists, cannot take away the defense, unless some innocent person acts upon the statement, and then it becomes an estoppel *in pais*.

I say then there was no confirmation of these usurious contracts, because that was impossible while they remained executory. The defendant, Joseph Harrison, was not constituted the trustee of any fund for their payment, nor was he affected by any estoppel. None of those grounds afford the reason which prevented him from defending his lands against liens which were usurious and void. The true reason has been stated. His conveyance, being of a partial estate or interest, an equity of redemption only, did not place him in privity with the contracts. His relations to the usury, were therefore those of a mere stranger, in other words he stood in no relation to it. As the owner of an equity of redemption, he held nothing, and he bought nothing, producing a conflict of title or interest between him and the holder of the mortgages.

This was a condition, as we have said, which might be improved by the conveyance to him of a more perfect estate; and it has been shown that the mortgagee, having the whole estate, subject to no valid lien, could make to him a better assurance and give to him the whole title or interest. The remaining question, therefore, is, whether this was done. And I think it was. The instrument subsequently executed was under the hand and seal of the mortgagor; and it declared that the clause in the original deed, stating it to be subject to the mortgages or the payment thereof, was thereby canceled and annulled. A simple deed, without reservation or exception, and professing to convey the whole title, would have been more appropriate to the purpose in view. But I cannot avoid

Hartley *v.* Harrison.

the conclusion that the writing, such as it was, had that effect. The parties to a conveyance may undoubtedly, by a new instrument under seal, limit or enlarge the estate granted. To do this is merely to reform the conveyance according to the previous or the present intent of the parties. What the courts of equity often do, can certainly be done by the parties themselves. If a mistake had been alleged, and a judicial decree had been pronounced, amending the clause in the first deed, which subjected the land to the payment of the mortgages, the estate would have been held by the grantee without that qualification. The claim being annulled by the act of the grantor and grantee, clothed in due form, the same result is produced. To cancel the restrictive words of an instrument, is equivalent in law to the making and delivery of a new one without the restriction. It seems to me that argument cannot make this plainer. In reference, therefore, to the two mortgages which were void for usury, the conclusion is inevitable that James Harrison became seised of a full and perfect estate in the premises. This being so, his right to resist those pretended liens is not and cannot be denied. The right of a borrower to defend himself against a usurious demand, is necessarily enjoyed by every person whose property or estate is sought to be affected by such demand.

All the facts upon which the defense of Joseph Harrison depends did not exist at the time when the issue in the case was joined. The further assurance of his grantor was executed after that time and shortly before the trial. In strictness, a supplemental answer might have been necessary. But no objection was made at the trial on this ground. If it had been, a further answer might have been allowed. The question determined was, that the facts did not constitute a defense, and that is the question in this court.

I am of opinion that the judgment should be reversed, and a new trial granted.

Judgment affirmed.