## NEW YORK SUPERIOR COURT.

Joseph W. Hartley, respondent agt. Benjamin Tatham and wife, impleaded, &c., appellants.

An *assignee of a mortgage* takes it subject to the same *equity* that it was subject to in the hands of the *assignor*, and the rule that it is only an equity residing in the *original debtor*, and not the latent equities of third persons against the assignor that have this effect, does not exclude any one who so far stands in the place of the debtor *as to have acquired his equity.* It does not exclude a judgment creditor of the debtor claiming to redeem.

Where a defendant in a mortgage foreclosure suit has succeeded to the rights of the mortgagor, by taking a deed of the premises subject to the mortgage, he may insist upon the fact of an *actual partial payment to the mortgagee*, while he owned the mortgage—a fact which ordinary precaution would have brought to the knowledge of the *assignee*, whether he had inquired of the mortgagor or of the grantee.

*New York General Term, March,* 1863.

Bosworth, *Ch. J.*, Moncrief and Robertson, *Justices.*

Appeal from judgment at special term. The facts will sufficiently appear in the opinion of the court.

Mr. Clarke, *for appellants.*
Mr. Porter, *for respondent.*

By the court, Bosworth, C. J. This action is brought to foreclose a mortgage dated May 30, 1861, executed by Michael Cunningham and wife to Samuel W. Dunscomb, and by the latter assigned to the plaintiff May 13, 1862.

The defence is founded, in part, on the allegation, that while Dunscomb owned the mortgage, one Alfred A. Aiment, who, by a written contract with one Higginson, to which Dunscomb was a party, had contracted for a deed of the premises in question, subject to this and a prior mortgage of $4,000, by agreement between him and Dunscomb, performed work and labor to the amount of $490.03, in part payment of this mortgage ; that, in execution of said written contract, the deed, at Aiment's request, was executed to Tatham instead of Aiment, January 26, 1862. The *habendum* clause of this deed is, " to have and to hold * * * subject, however, * * * to a certain other indenture of mortgage for $1,500, dated May 30, 1861, and recorded," &c., being the mortgage in question. The deed does not declare that Tatham is to pay this mortgage, nor did the agreement between Higginson and Aiment require him to do it. That stipulates for a deed of the premises to Aiment, free and clear of all incumbrances, " except the said sum of $5,500." Aiment was to do plumbing work to the amount of $3,600 for Higginson, as a consideration for

such conveyance, and did the work. The agreement between Aiment and Dunscomb for doing the work, &c., amounting to $490.03, was made prior to January, 1862, and was completed as early as April, 1862, and on the 3d of May, 1862, Aiment assigned to Tatham this claim for work, amounting to $490.03. The assignment recites that the work, &c., creating the debt, was done for Dunscomb upon his agreement to credit the amount on this mortgage. The assignment of the mortgage to the plaintiff was made on the 13th of May, 1862. The important question is, whether Tatham is entitled to be credited with this sum on the mortgage.

A finding by the court, or the verdict of a jury to the effect that this work was done by Aiment, under an agreement between him and Dunscomb, that the amount of it should be in payment of the mortgage *pro tanto*, could not be disturbed as contrary to evidence given, and substantially stricken from the case against the objection and exception of Tatham.

If the mortgagor had paid $490.03 on the mortgage before it was assigned, the assignee would necessarily have taken it subject to such payment. That position is not controverted.

But it is insisted that this equity in behalf of Aiment and Tatham is a latent one, in a third person, and one existing between him and the mortgagee only, and that the assignee cannot be affected by it.

It was necessary for Aiment to pay off the mortgages or suffer the property to be sold to satisfy them. He was not personally liable to pay them, because he never agreed to do so. If he had agreed to pay them off, he would be personally liable to pay them, (*Burr* agt. *Beers*, 24 *N. Y. R.*, 178,) and as between himself and the mortgagor, would have been; in equity, the principal debtor.

Aiment, at the time he agreed with Dunscomb to do work, in payment, to the extent of the value of such work,

upon this mortgage, had a valid contract for a deed of the premises in question. To this contract Dunscomb was so far a party that he assented to it, and in such wise that the deed, when executed, was to be executed by him or by some one holding the title for him; and Aiment was either to pay the mortgages in discharge of the liability of the mortgagor, or lose all he paid on the premises, by a foreclosure and sale of the mortgaged premises.

It is said, in the opinion, (*in James* agt. *Morey*, 2 *Cowen Rep.*, 298,) that "the assignee can always go to the debtor and ascertain what claims he may have against the bond or other chose in action, which he is about purchasing from the obligee; but he may not be able with the utmost diligence to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries, and for this reason the claim of the assignee, without notice, of a chose in action, was preferred in the late case of *Redfearn* agt. *Ferrier and others*, (1 *Dow Rep.*, 50,) to that of a third party setting up a secret equity against the assignor."

The right application of these rules to the present case cannot produce a result adverse to Tatham. An inquiry of the mortgagor would presumptively have informed him of the fact of this payment. If the plaintiff did not have notice of it when he took the assignment, he obtained it the same evening and within a few hours thereafter.

The deed from Smith to Tatham was recorded over two months before the mortgage was assigned to the plaintiff, and as that deed was subject to this mortgage, it pointed out Tatham as a person interested to pay the mortgage, and one who had a right to pay it, even though he may have been under no legal obligation to do so. He was a proper person to ask whether he had made any payments upon it or not.

The case of *James* agt. *Morey* (*supra*) is unlike this in its essential particulars. In that case the mortgagee, before

assigning the mortgage, had become the owner of the equity of redemption, and might at his election treat his estate, as mortgagee, as merged in the legal estate, or preserve it as a separate estate.

After assigning the mortgage he quit-claimed the mortgaged premises to the respondent. The latent equity was that of the respondent under such deed, who took it ignorant of the previous assignment of the mortgage. (*Id*; 2 *Cowen Rep.*, 283.) The mortgage was enforced in behalf of the assignee as a valid and subsisting security.

Assuming the fact to be that Aiment paid to Dunscomb upon this mortgage, while the latter owned it, the sum of $490.03, it is difficult to conceive of any sound considerations of justice or equity which will make it less efficient than if the same sum had been paid at the same time by Cunningham. Payment by the latter before the assignment would be allowed, and so would a payment subsequent to the assignment and before notice of the assignment. (*James* agt. *Morey*, 2 *Cow. R.*, 297; 3 *R. S.*, *5th ed.*, *p.* 59, § 74, [*sec.* 41].)

The gist of *Redfearn* agt. *Ferrier* (*supra*) may be stated thus : On the books of a stock company one Stewart appeared to be the owner of a certain number of its shares. By the rules of the company such shares could be owned by individuals only, not by firms as such. He assigned the shares to Redfearn as security for moneys advanced *optima fide*, and it was sought to be shown, to defeat the claim of such an assignee, that Stewart, in fact, held the stock for a firm who were the true equitable owners. The question was whether this latent equity of the firm against the assignor could defeat such an assignee's title, and on the facts and circumstances of the case it was held that it could not.

That case, too, is essentially unlike the present.

The true rule deducible from the cases I understand to be this : The assignee of a mortgage takes it subject to the

same equity that it was subject to in the hands of the assignor, and the rule that it is only an equity residing in the original debtor, and not the latent equities of third persons against the assignor that have this effect, does not exclude any one who so far stands in the place of the debtor as to have acquired his equity. It does not exclude a judgment creditor of the debtor claiming to redeem. (*Roosevelt* agt. *Bank of Niagara, Hopk. R.*, 579; *United States* agt. *Sturges*, 1 *Paine R.*, 525.)

By force of the contracts between Higginson and Dunscomb, (of the 23d of April, 1860, and of the 24th of April, 1860,) and of the contracts between Higginson and Aiment, (of the date of March 30, 1861,) and Dunscomb's written assent and cotemporaneous agreement in relation thereto, and of Aiment's assignment to the Bull's Head Bank, and through the bank to Tatham, of the right to a deed of the premises in question, and of the execution of such deed to Tatham, and the payment by Aiment of the $490.03 on the mortgage, and the formal assignment, May 3, 1862, by Aiment to Tatham of this claim, and of his right to have it applied as a payment, Tatham was substituted in place of the mortgagor and Aiment, with all their rights, equitable as well as legal.

As between him and the mortgagor, the property was a security for the payment of the amount due on the mortgage, because it had been, and, by the aforesaid agreements, was to be conveyed subject to this and the prior mortgage of $4,000. The mortgage debts, as between the mortgagor and Aiment, or as between the mortgagor and Tatham, Aiment and Tatham were in equity bound to pay, if the premises were an adequate security for their payment. Such being the position of Tatham, he did pay $490.03 on the mortgage while Dunscomb owned it. He at that time stood in the place of the mortgagor, and was clothed with all his rights, and his equity to be protected in such pay-

ment is as clear as that of the mortgagor would have been if he had made the payment personally.

From the time of the recording of the deed to Tatham, the record disclosed him as the person having the right of being under an equitable obligation to pay the mortgage in exoneration of the personal liability of the mortgagor. He was, therefore, a person of whom it was as proper and as much the duty of one about taking an assignment of the mortgage, to inquire as to the fact of payments as the mortgagor himself.

It is not, therefore, the case of a defendant attempting to set up against the assignee of a mortgage the latent equity of a third person against the mortgagee, but the case of one who has succeeded to the rights of the mortgagor, and entitled to the same protection that the law extends to him, insisting upon the fact of an actual partial payment to the mortgagee, while he owned the mortgage, a fact which ordinary precaution would have brought to the knowledge of the assignee, whether he had inquired of the mortgagor or of Tatham.

It is insisted, however, that taking the deed, subject to the mortgage, estops Tatham from questioning the fact of its being a valid security for the face of it.

The deed does not state that no part of it has been paid; and no authority has been cited which tends to the support of the proposition, that taking a deed in the form of the deed to Tatham precludes the grantee from showing that the mortgage had been in part paid before the deed was given and accepted.

If the deed had not only in terms been subject to this mortgage, but had also declared that the whole amount was unpaid, and that the grantee assumed the payment of it, he might possibly be precluded from showing, as between himself and a *bona fide* assignee of the mortgage, the fact of a partial payment. (*Burr* agt. *Beers*, 24 *N. Y. R.*, 178; *Hailey, exr.* agt. *Harrison, id.*, 170.)

But no such question arises here. I think, therefore, that the decision at special term, excluding evidence of the defence consisting of the facts before stated, and striking from the case the evidence that had been given in support of it, was erroneous, and that the judgment should be reversed and a new trial granted, with costs to abide the event.