## SUPREME COURT.

MARCUS FLEISCHAUER agt. JOHN F. DOELLNER and others.

*Grantor and grantee — Covenant to pay a mortgage — When it cannot be released.*

An oral agreement, made contemporaneous with the delivery of a deed of real estate, as between the parties, that the grantor would take a reconveyance of the property and release his grantee from covenants in the deed, should be clear in respect to its terms, and as to the contingencies upon which a reconveyance could be justly insisted upon, and should be made and carried out in good faith.

Where the grantee of the premises acknowledged his liability under the covenant in his deed to pay a mortgage upon the land, by paying to the mortgagee a part of the principal, and obtaining an extension of time to pay the residue, without the consent of the mortgagor, by which the mortgagor was released, and by thereafter paying interest on the balance due to the mortgagee and his assigns, and promises to pay the balance without reservation:

*Held,* that he could not thereafter obtain from his original grantor, under an alleged antecedent agreement, a valid release from his covenant to pay the mortgage.

*Develin* agt. *Murphy* (56 *How. P. R.*, 326) distinguished.

*Special Term, December,* 1879.

*Laurence & Waehner*, for plaintiff.

*Samuel Untermeyer* and *Albert Cardozo*, for defendants.

VAN VORST, *J.*— I reach the conclusion, from a consideration of all the evidence, that contemporaneous with the execution and delivery of the deed by Doellner, the owner of the premises in the year 1873, to the defendant, Guggenheimer, there was a verbal agreement existing between the parties, by which the right was reserved to Guggenheimer, the grantee, to reconvey the property to Doellner upon certain contingencies ; and that the conveyance made was subject to that agreement, and that the agreement, although not in writing, was a valid collateral engagement, which it was within the power

Fleischauer agt. Doellner.

of the parties honestly to carry out, although it might deprive a third party, not privy to the deed or agreement, of some rights, flowing from a covenant in the original deed, if allowed to stand.

It seems to me clear that the rights of such third party are in subordination to the equities of the principal persons growing out of their own agreement (*Devlin* agt. *Murphy*, 56 *How.*, 326).

That some such agreement was made at the time the deed was agreed to be taken, and was delivered, is established by the evidence of Doellner and Guggenheimer directly, and their evidence finds some corroboration from the fact that Shuster, who was then the owner of the mortgage, executed by Doellner, and which was a lien on the premises when he conveyed, and which Guggenheimer assumed and agreed to pay as part of the consideration for the conveyance, in 1875 or 1876, applied to Doellner to ascertain whether any such agreement was in existence.

Such inquiry would not be likely to have been made, unless Shuster had, in some way, heard of it; that his counsel advised him to make the inquiry, does not, in my judgment, break the force of such conclusion.

Such inquiry would be too exceptional, at that early day, although suggested by counsel, unless something had before then proceeded from Doellner or Guggenheimer, as to the existence of some agreement on the subject, which Shuster or his counsel had heard. In fact, Shuster testifies that there was some talk of such release; he had heard of it. But the material question is as to the terms of the agreement.

The testimony of Doellner is not full or entirely clear in respect to the details, and standing alone, would be too indefinite to warrant any opinion as to the contingencies upon which a reconveyance could be justly insisted upon, or as to its conditions.

Guggenheimer, on the other hand, gives what the general statement of Doellner fails to furnish.

He says that, at the time he agreed to take the property from Doellner, he said, in substance, that he was taking it entirely upon what had been told him by one Simon; that he had not personally examined the property, and that the trade would not go through, unless Doellner made him a promise that, at any time, if the representations which had been made were not "*exactly so*," and unless he had, in such event, the privilege to make a return of the property, and deed it back, he, at the same time, accounting for any profits, which had accrued in the meantime; that Doellner agreed to this, and promised that he would, upon such reconveyance, release Doellner, upon his accounting, from all the covenants in the deed.

After the conveyance to him, Guggenheimer entered into possession of the property and received its rents and profits.

He put himself in personal communication with the holder of the mortgage and paid a portion of the principal due, and in effect changed the conditions of the mortgage by obtaining an extension of the time of making further payments.

He remained the owner of the property and received its rents from October, 1873, the date of the conveyance to him, until July, 1874, when he conveyed the same to Maria Simpson, subject to the mortgage.

It does not appear that he, at any time while he was the owner of the premises, made any complaint that any representations, upon the strength of which he had bought the property, were not true, or that he was dissatisfied with the property.

During this period sufficient time had elapsed to have enabled the defendants to learn whatever was needful to know with respect to the property.

The fact that he made payments of both principal and interest upon the mortgage, and had undertaken to convey it away, raises the presumption that he was satisfied with his bargain.

His absolute and unqualified conveyance to Maria Simpson,

is entirely inconsistent with any remaining right in him to reconvey to Doellner.

In August, 1875, Maria Simpson deeded the premises to one Mary Jane Simpson, who, in July, 1876, conveyed the same to Isaac Mendelson, subject to the mortgage, and on the 4th of March, 1876, Mendelson conveyed the premises to Eliza, the wife of the defendant, Guggenheimer.

In July, 1879, Eliza, the wife of the defendant Guggenheimer, by deed, in which her husband joined, conveyed the property to the defendant, Doellner, and Guggenheimer received from him a release from the covenant contained in the conveyance of October, 1873, by which Guggenheimer had assumed to pay the mortgage. Without for the moment adverting to the evident want of good faith in that transaction, I must conclude that the release in question is wholly inoperative to discharge the defendant from his obligation to pay the mortgage, and that as to the plaintiff it has no force whatever.

After what had transpired between himself and the holder of the mortgage, his payments thereon, the extension obtained, and his unqualified recognition of his agreement to pay the same, and his repeated promises to do so, his continued possession of the property, and his receipt to his own use of the rents and profits, without objection, and the assertion of an absolute right to convey it to others, it was too late, he having thus recognized the claims of the owner of the mortgage, under his covenant to pay the same, to fall back upon and attempt to revive an anterior agreement, with his original grantor, to receive a reconveyance, which all the facts and circumstances show he must have waived or abandoned. And while Doellner was clearly not legally or equitably bound to accept a reconveyance and give the release, under the facts and circumstances lastly above alluded to, I do not think that he could voluntarily do so, to the prejudice of the rights of the holder of the mortgage. Doellner had, by the covenant of Guggenheimer to pay the mortgage, become a mere surety,

Fleischauer agt. Doellner.

and Guggenheimer the principal debtor, and the extension obtained by the latter, without the consent of Doellner, the surety, had the effect to release him from all claim in favor of the holder of the mortgage (*Calvo* agt. *Davis*, 73 *N. Y.*, 211).

In such condition, Doellner had nothing to release, and his attempt to do so seems a gratuitous attempt to deprive the plaintiff of his remedy against Guggenheimer, and its good faith may well be questioned. The want of good faith is made clear by what transpired when the release was given. This case is clearly distinguishable from *Develin* agt. *Murphy* (*supra*). The good faith of the parties in that case was not impeached. There was no accounting by Guggenheimer in any true sense. He proposed to account for the rents received while he was the owner of the property, but for some years, and while the property was held by his grantees, no accounting was had.

There are other features of this transaction to which, were it necessary, allusion might well be made, which tend further to show that it was hurried through, and the release secured to avoid the plaintiff's claim against Guggenheimer, theretofore distinctly asserted. The methods and expedients adopted should not receive favor in a court of equity. But enough has been said to establish that the plaintiff's claim against Guggenheimer is unaffected by the pretended release.

Doellner having been discharged by the extension, he is entitled to judgment in his favor, but as to Guggenheimer he is liable for any deficiency arising on the sale of the mortgaged premises, and judgment is ordered accordingly.

NOTE.—See note to *Develin* agt. *Murphy* (56 *How.*, 329); *Trustees, &c.*, agt. *Anderson* (30 *N. J.* [*Equity*], 3 *Stuart*, 366); *Hartly* agt. *Harrison* (24 *N. Y.*, 170); *Douglass* agt. *Wells* (57 *How. P. R.*, 378). [ED.