NATHANIEL M. BENNETT, APPELLANT, v. MARY A. BATES AND CHESTER S. BATES, RESPONDENTS, IMPLEADED WITH FANNY K. SIMONS.

*Assignee of a mortgage — what defenses are available against him — when one purchasing subject to a mortgage may attack the same — when the purchaser cannot set up damages sustained by his grantor.*

One Allen owned certain lands covered by two mortgages amounting to $11,196.67, which were held by Fanny K. Simons. It was agreed between them that Allen should convey the premises to her for the price of $15,000, which she was to pay by satisfying the two mortgages and giving him a new one for the balance. Through the fraud of Allen, Mrs. Simons was induced to satisfy the two mortgages and give a new one to him for $15,000, which he assigned to Hill, who thereafter assigned it to the plaintiff. Thereafter Mrs. Simons entered into a written agreement to exchange the mortgaged premises with Mrs. Bates for other lands. The mortgaged premises were valued at $24,050, and were to be taken subject to the $15,000 mortgage and interest ; the lands to be taken from Mrs. Bates were valued at $8,000. Thereafter the mortgaged premises were conveyed to Mrs. Bates, the deed providing that the conveyance was made "subject to a certain mortgage executed by the party of the first part to Thomas E. Allen for the sum of $15,000, bearing date May 10, 1876, if there shall be found anything owing and unpaid upon the same."

In an action brought by the plaintiff to foreclose the mortgage:

*Held,* that Mrs. Bates, under the terms of the clause assuming the mortgage, could set up the fraud practiced upon Mrs. Simons, and have the mortgage reduced to the amount for which it should have been given. (LEARNED, P. J., dissenting, on the ground that both the oral negotiations and the contract [under which Mrs. Bates went into possession of the premises], entered into prior to the delivery of the aforesaid deed, showed that the mortgage was recognized as a valid existing mortgage for $15,000 and interest.)

After the making of the contract for the exchange of the lands, and after the assignment to the plaintiff in this action of the $15,000 mortgage, the mortgaged premises were sold, and purchased by Mrs. Simons, under the foreclosure of a prior mortgage thereon given by Allen, which Allen, at the time of his sale to Mrs. Simons, had told her was paid and discharged.

*Held,* that Mrs. Bates could not set-off the damages thereby occasioned to Mrs. Simons, as against the plaintiff's mortgage.

APPEAL from a judgment, entered on a trial by the court without a jury.

*Samuel Hand,* for the appellant.

*Charles S. Lester,* for the respondents.

RUMSEY, J. :

The action is brought to foreclose a mortgage for $15,000 given by the defendant, Fanny K. Simons, to one Allen, and afterward assigned to the plaintiff.

It appears from the case that Allen was the owner of the premises covered by the mortgage, and that Mrs. Simons held two mortgages given by Allen amounting to the sum of $11,196.67. That an arrangement was made between them by which she was to buy the premises of Allen for $15,000, and pay him by satisfying her mortgages and giving him her bond and mortgage for the remainder; that when the contract was executed, the two prior mortgages were satisfied, but through the fraud of Allen the amount of them was not deducted from the agreed price, but Mrs. Simons gave her bond and mortgage for the full sum of $15,000. It further appears that at the time of this transaction there was upon the premises a prior mortgage for $1,000, which Allen fraudulently represented to Mrs. Simons was paid, but that in fact an action was then pending to foreclose it, and that Mrs. Simons was compelled to bid the premises in on the foreclosure sale and pay $1,436.58, the amount due on that mortgage. On the 9th day of February, 1877, Mrs. Simons contracted with the defendant, Mary A. Bates, to exchange the mortgaged premises for certain lands owned by Mrs. Bates. The price fixed for these mortgaged premises was $24,050. Mrs. Bates was to take the premises subject to the plaintiff's mortgage and interest, and the value of the lands to be conveyed to Mrs. Simons was fixed at the difference between $24,050, and the amount then estimated due on the mortgage. In September, 1877, Mrs. Simons completed the transaction by conveying the premises to Mrs. Bates. The deed contained the following clause: "Subject to a certain mortgage executed by the party of the first part, to Thomas E. Allen, for the sum of fifteen thousand dollars, bearing date May 10, 1876, if there shall be found anything owing and unpaid on the same."

In 1879 the plaintiff brought this action to foreclose the mortgage. Mrs. Simons answered setting up the fraud in the transactions between herself and Allen, and claiming that the mortgage should be reduced by the amount which Allen had defrauded her. After she had answered, she was by order of the court and with

consent of plaintiff released from any liability on her bond. Mrs. Bates also answered, setting up the same defenses as were pleaded by Mrs. Simons.

Upon the trial the learned justice found the facts substantially as stated above, and held that Mrs. Bates was entitled to have deducted from the amount of the mortgage, the damages which Mrs. Simons sustained by the two frauds of Allen, and that the mortgage was a lien only for the difference, deducting a payment made on it, and ordered judgment of foreclosure for that amount. From the judgment entered on this decision plaintiff appeals.

As to the question whether a deed was delivered from Mrs. Simons to Mrs. Bates before the deed of September 25, 1877, we see no reason to dissent from the conclusion of the learned justice at Special Term. He had the witnesses before him, and could judge better than we, of the credit to be given to them.

The serious question presented is upon the effect of the provision of the deed of September 25, 1877. There can be no doubt that if the deed had said simply that the land was conveyed subject to the mortgage of $15,000, and that sum had been deducted from the price, the case would be within *Freeman* v. *Auld* (44 N. Y., 50), and Mrs. Bates could not question that the whole sum was due. But the deed contains more. It is said that the land is conveyed subject to that mortgage of $15,000, if there shall be found anything due and owing upon it. We must give effect to this clause, and we are clear, as matter of law, that by reason of it, Mrs. Bates stands in the same condition as if she had purchased the premises subject to the mortgage exactly as it was in truth, without regard to the amount of the purchase-price. In that case there is no doubt that Mrs. Bates can question the amount due to the same extent as Mrs. Simons might. (*Russell* v. *Kinney*, 1 Sandf. Ch., 34, 39; *Hartley* v. *Tatham*, 10 Bosw., 273.) The rule is well settled that the plaintiff took this mortgage subject to all defenses in the hands of the mortgagor. (*Trustees of Union College* v. *Wheeler*, 61 N. Y., 88.) He holds it subject to the equities attending the original transaction. (*Crane* v. *Turner*, 67 N. Y., 437.) Looking at the original transaction, we see that there never was $15,000 due. The whole sum due upon it when it was given was but $3,803.33. That was in fact the sum " due and owing," the amount legally demandable upon

it, and as to which it was in fact a lien. As to all the remainder there was a perfect defense to the mortgage. And this defense was not personal to Mrs. Simons, but arose from the fact that there was a failure of consideration.

We think the court at Special Term was right in holding that this sum of $11,196.67, was not owing upon this mortgage, and that it was not a lien upon Mrs. Bates' premises to that extent. We are also quite clear that the payment of $1,050, made May 10, 1877, was properly deducted from the amount of the mortgage. No such amount of interest was due on that day, and as the payment was greater than the interest, the excess was properly credited on the principal.

But the amount of the Taylor mortgage stands on a different footing. Upon the facts found, the right to recover from Allen for that fraud was a separate and independent cause of action, which belonged to Mrs. Simons. (*Gillespie* v. *Torrance*, 25 N. Y., 306; *Henry* v. *Daley*, 17 Hun, 210.) It never was the property of Mrs. Bates, and there is nothing to prevent Mrs. Simons asserting it now against Allen. Besides that, we do not think that it existed as a cause of action in favor of Mrs. Simons when this mortgage was assigned by Allen. It is true that Allen had then made the fraudulent representations, but no damage had come to her. If he had afterward paid the mortgage, or if it had been extinguished, no damage would have resulted. Till there is damage there is no cause of action. It is the concurrence of fraud and damage which gives the right of action. (*Hubbard* v. *Briggs*, 31 N. Y., 518, 529; Cooley on Torts, 62; *People* v. *Stephens*, 71 N. Y., 557, per Allen, J.) Mrs. Simons suffered no damage until she bid off the premises on the foreclosure sale in July, 1877.

The plaintiff then owned this mortgage. His rights had before that attached, and the right of action then arising against Allen could not affect him. (Code of Civ. Proc., § 502, sub. 1.)

The purchase by Mrs. Simons at the sale upon this mortgage did not extinguish the lien of the plaintiff's mortgage. She was then the owner of the fee, but she had contracted to sell and she was bound to pay the Taylor mortgage, and she bought the premises at that sale simply as a way of carrying out her contract. Her subsequent conduct shows that she did not intend to extinguish

plaintiff's mortgage, for she conveyed subject to it, and Mrs. Bates having taken subject to that mortgage cannot now question its existence or validity. (Jones on Mortgages, §§ 735, 736.)

We do not think that the court erred in excluding the evidence of Bates' declarations a year after the transaction. It did not appear that when he made them he was acting in his wife's business, and therefore they were not original evidence. (Abb. Trial Ev., 327.) It appears by the case to have been offered for no other purpose.

For the error in regard to the Taylor mortgage the judgment must be reversed and a new trial ordered, costs to abide event, unless the defendant shall stipulate to modify it by adding to the amount for which the mortgage is to be deemed a lien the sum of $1,041.41, with interest at seven per cent from May 10, 1876, being the amount then deducted for the Taylor mortgage. Such stipulation, if made, to be given in twenty days after service of this order. If such a stipulation is given the judgment as modified is affirmed, without costs of this appeal to either party.

OSBORN, J., concurred.

LEARNED, P. J. (dissenting):

Mrs. Simons had sold the property in question to Allen, and had taken back a mortgage. Afterwards she lent him money and took another mortgage on the premises, making in all $10,500 of principal. Then Allen sold the premises with the furniture thereon, etc., to Mrs. Simons at the price of $15,000. She satisfied her two mortgages, and if the bargain had been fairly performed she should have given him a mortgage for the difference, say $4,500. But by Allen's fraud and her mistake she gave him a mortgage for the whole $15,000, which was dated May 10, 1876. Allen had also executed on the premises another mortgage of $1,000, called the Taylor mortgage. This he falsely asserted to her had been paid. The next day after the execution of this $15,000 mortgage Allen assigned it to Mr. Hill, who had acted as attorney and had prepared the papers and was familiar with the whole transaction, and a month or so afterwards, June 17, 1876, Hill assigned it to the plaintiff with a guaranty of collection.

Afterwards, on the 9th of February, 1877, Mrs. Simons, having

previously learned of the existence of this $15,000 mortgage, made a contract, under hand and seal, with Mary A. Bates, the defendant. Hill acted for Mrs. Simons, and Mrs. Bates' husband for her. This contract was the result of previous negotiations, by which Mrs. Simons was to sell the premises, with certain personal property, for $25,000, and was to take certain property from Mrs. Bates in payment.

The contract recited that Mrs. Bates had purchased the real estate and personal property of Mrs. Simons; that the deed of conveyance had been made out, and was in the hands of Hill; that Mrs. Bates had sold to Mrs. Simons certain land, the deed for which was also deposited with Hill for Mrs. Simons. It stated that Mrs. Bates was to have actual possession April 20, 1877; that all matters were considered as consummated, as of the date of the instrument; and either party was at liberty to make sales from that time. It also contained the following clause: "It is further understood that a certain mortgage of $15,000, dated the 10th of May, 1876, upon the premises conveyed to the said Mrs. Bates by Mrs. Simons, an extension of the payment of the interest due thereon shall be made until the 15th day of August, 1877; and, in consideration therefor, the said Bates shall execute and deliver a chattel mortgage, covering the personal property conveyed to her by Mrs. Simons as collateral security for the payment of the interest on said $15,000 mortgage, which will become due May 10, 1877, to the holder of said mortgage." It appears, by an examination of the original contract, that, as first drawn, it read: "As collateral security for the payment of said $15,000 and interest to the holder of said mortgage." This fact is important to show that the mortgage was recognized as valid to its full amount.

Testimony was given by Hill that Mrs. Simons had executed and put in his hands a deed of the premises in February, 1877, about the date of the contract, in which he inserted the name of Chester S. Bates, the husband of Mrs. Bates; that he showed it to Mrs. Bates, who said that it should be to Mrs. Bates; that Hill corrected it accordingly, and that about May 1, 1877, he delivered that deed. Mr. Bates denies this delivery, but not the existence of such a deed, and testifies that the only deed of the premises delivered was that dated September 25, 1877, and on this conflict of evidence the learned justice found with the defendant.

The Taylor mortgage above mentioned was foreclosed and the premises were sold July 3, 1877, to Mrs. Simons. Afterwards Mrs. Simons executed a warranty deed, dated September 25, 1877, to Mrs. Bates for the consideration of $25,000, as expressed, by which she conveyed the said premises with this clause: "Subject also to a certain mortgage executed by the party of the first part to Thomas E. Allen for the sum of fifteen thousand dollars, bearing date the 10th day of May, 1876, and recorded in the Saratoga county clerk's office on the 12th day of May, 1876, if there shall be found anything owing and unpaid upon the same."

Mrs. Bates paid the $1,050 interest on the $15,000 mortgage which came due in the spring, but she paid no other sum on the mortgage. It was testified by Mr. Bates that in making the bargain in behalf of his wife for the purchase of these premises he dealt with one Jones, as agent of Mrs. Simons; that both Jones and Hill told him that there was a mortgage of $15,000 on the property which Bennett, the plaintiff, held, on which $1,050 would be payable May tenth. He testified that he was to pay for the house and furniture $24,050; that, deducting the $15,000 and the $1,050, there was a balance of $8,000, for which he arranged by the conveyance of certain property; that he was to take the premises subject to the mortgage of $15,000 and to pay the balance, $8,000.

It is very evident that a gross fraud was practiced by Allen on Mrs. Simons, and if the question now before us arose between him and her, or between his assignee and her, there could be little doubt what justice would demand. But Mrs. Simons is not the owner of the premises, and therefore has no interest in the question of the extent of the mortgage. She has been released from any liability on the bond, and therefore has no interest in any matter here involved. The fraud practiced upon her cannot in any way be redressed in this action, whatever be its result. Mrs. Simons might evidently, if she chose, waive the fraud that had been practiced upon her and ratify the mortgage. If she sold the premises and made them expressly subject to the full amount of this mortgage, the purchaser would have no right to insist that that full amount was not payable. If we look, then, at the transaction between her and Mrs. Bates we find in the first place that Mrs. Bates' agent testifies that the bargain was that Mrs. Bates was to give $24,050 for

the property; that the mortgage of $15,000 and the accumulated interest of $1,050 were to be deducted from that amount, and that Mrs. Bates was to pay Mrs. Simons $8,000, being the balance. That balance, and only that balance, Mrs. Bates paid. Mrs. Bates, therefore, accepted the property charged with the full amount of the $15,000 mortgage. Then, when that bargain was reduced to writing it is stated therein (though with some inaccuracy of language) that this $15,000 mortgage is on the premises; and, putting the matter beyond all doubt, Mrs. Bates agrees to give collateral security for the payment of the next interest " on the said fifteen thousand dollar mortgage." The alteration in the instrument shows that it was first requested by Mrs. Simons' agent that this security should be for the payment of the said $15,000 *and interest.* This is only material as it corroborates the other testimony to the effect that the mortgage was treated by the parties as good for the full amount.

Now, this written and sealed agreement recites an actual purchase, not merely a contract to purchase, and an actual execution by Mrs. Simons of the deed. And it declares that matters are consummated as of its date. Mrs. Bates, as her husband testifies, went into possession of the premises under that contract, and ever since April 19, 1877, has been in possession thereof. Mrs. Bates' title, therefore, at least in equity, was good from that date, by virtue of the contract and of her payment and her possession; and it was good, even if the deed, which the contract admits to be in Mr. Hill's hand, was in fact never delivered. That such a deed was in existence Mr. Bates himself testifies. For he says that, after the contract was executed, he saw in Hill's office a deed indorsed Fanny K. Simons to Chester S. Bates, and opened it and told Hill the deed should be made to his wife. This is the deed which Hill says he corrected accordingly and delivered. Both the oral negotiation, therefore, and the sealed contract establish the fact that Mrs. Bates accepted the land, subject to the $15,000 mortgage. (*Freeman* v. *Auld,* 44 N. Y., 50.) So, too, Mrs. Bates paid the interest (payable annually) on $15,000, which came payable that spring, and for which she had given, or had agreed to give, collateral security. By giving this security she obtained an extension of time on this interest for some three months. If she had not agreed that the premises were subject to the whole $15,000, then she would not have paid a year's

interest on that amount. But it is urged by the defendant that the
clause contained in the subsequent deed of September twenty-fifth
has changed the rights of the parties. Assuming that no previous
deed had been delivered, it must still be noticed that Mrs. Bates
had been in possession for some five months under a valid and
sealed contract; and that, as early as February 8, 1877, she had paid
for these premises by the execution of deeds of the property, given
in exchange. Her rights were complete, certainly in equity. By
the agreement with Mrs. Simons, she had bought property esti-
mated at $24,000, for $8,000 actual payment, because it was
incumbered for $15,000 and $1,050 interest.

The case cited by the defendant of *Russell* v. *Kinney* (1 Sand.
Ch., 34) was one where the court held that there was in fact no
defense to the mortgage. The question of estoppel as to a pur-
chaser did not arise. In the case of *Hartley* v. *Tatham* (10 Bosw.,
273; S. C., 1 Keyes, 222) the mortgage was assigned to plaintiff
May 13, 1862. On the 3d of May, 1862, Tatham, the holder of
the equity of redemption, by taking an assignment from one
Arment of a certain claim, did practically pay a certain amount on
the mortgage. Tatham's deed was in terms subject to the mort-
gage. There is nothing in the case to show that in purchasing the
premises from one Smith, Tatham in any way agreed upon the
amount payable on the mortgage. These are the only cases cited
which seem to bear on the point. The defendant insists that the
present case is similar to one of a partial payment made upon a
mortgage. But there is a very decided difference. A payment on
a mortgage *pro tanto* discharges it and reduces the amount thereof.
It may be doubtful whether any transaction between the mortgagor
and a third party could do away with the effect of an actual pay-
ment, or make the mortgage a lien for more than the balance
actually due thereon. But this is not the case of payment. It is
the case of a fraud. And it lies with the defrauded party to assert
the fraud in such way as she may choose. She might sue Allen,
and perhaps Hill, for damages by reason of the fraud, instead of
setting up the fraud as a defense to the mortgage. If the defend-
ant's position is sound, then Mrs. Simons can never obtain redress
for the fraud practiced upon her. Because, if the damages sustained
by her are admitted in this action to reduce the amount of the

mortgage, the only person who is thereby benefited is Mrs. Bates And Mrs. Simons' right of action against Allen and Hill will be lost; inasmuch as it will then appear that she had sold the property, subject only to so much as might be payable on the mortgage after deducting the damages occasioned by the fraud. And the inference will necessarily be that she had obtained (say) $10,100 more for the property than she would have obtained, if the mortgage had been valid for $15,000. So that the result of allowing this defense is to take (say) $10,500 from Mr. Bennett and give it to Mrs. Bates; and further, to deprive Mrs. Simons of any future opportunity to recover damages against Allen or Hill.

Mrs. Bates did not personally agree to pay the mortgage. No question, therefore, arises as to the power of the grantor, Mrs. Simons, to release Mrs. Bates from a liability thus assumed. (*Knickerbocker Life Ins. Co.* v. *Nelson*, 78 N. Y., 137.) Nor is there any pretense that, in this case, the land has not been made the primary fund for the payment of the mortgage debt. It was such by the contract, and it was such by the deed. Nor can it be doubted that by the contract of February, 1877, fully performed at that time, and by the possession taken in April following, Mrs. Bates accepted this property with an incumbrance thereon, agreed to be $15,000 of principal. If the deed of September, 1877, was intended to change the effect of that bargain it was of no avail for that purpose. Like the releases and covenants in *Hartley* v. *Harrison* (24 N. Y., 170), a case which seems to be analogous.

The judgment should be reversed, new trial granted, costs to abide event.

Judgment reversed, new trial granted, costs to abide event unless defendant consents to modify as stated in opinion. If defendant so modifies, then affirmed, without costs.