**CLARK, Atty. Gen. v. THOMPSON.**

**No. 7600.**

United States District Court
E. D. Michigan, S. D.

March 10, 1949.

Joseph C. Murphy, Acting U. S. Atty., Roger P. O'Connor, Asst. U. S. Atty., and James Soltesz, Asst. U. S. Atty., all of Detroit, Mich., for plaintiff.

Norris A. Porter, of Dearborn, Mich., for defendant.

LEDERLE, Chief Judge.

1. This is an action brought by Tom C. Clark, Attorney General of the United States of America, as successor to the Alien Property Custodian, for the recovery of the amount representing the difference between the purchase and sale price of property sold by the Alien Property Custodian to the defendant, as pro- vided by the terms of a written offer to purchase and a written acceptance, and a lesser amount which was actually paid by the defendant.

2. Defendant is an individual residing at 25073 Michigan Avenue, Dearborn, Michigan, within this District, and the property in question is likewise situated in this District.

3. By Vesting Order No. 4368, issued November 28, 1944, filed with the Division of the Federal Register on January 5, 1945, published in 10 Federal Register 263 on January 6, 1945, James E. Markham, the then Alien Property Custodian, vested, subject to liens and encumbrances of record, certain land situated in Detroit, Wayne County, Michigan, described as:

Lot 47, F. C. Lewerenz Re-Subdivision of Lots 5, 6, 7 and 8, and East half of Lot 9 of Scotten and Lovett's Subdivision of all those parts of Private Claims 267, 268 and 270, lying between Fort Street and the Detroit, Monroe and Toledo Railroad and West of Waterman Avenue, Springwells, according to the plat thereof recorded in Liber 9 of Plats, Page 89.

4. By executive order No. 9788, 50 U. S.C.A.Appendix, § 6 note, issued and filed with the Division of the Federal Register on October 14, 1946, published October 15, 1946, in 11 Federal Register 11981, and amended in 11 Federal Register 12123, all authority, rights, privileges, powers, duties and functions of the Alien Property Custodian were vested in or transferred and delegated to the Attorney General, and all property and interests vested in, transferred to or seized by the Alien Property Custodian were transferred to the Attorney General.

5. At all times material hereto the above described property was subject to a recorded mortgage in favor of the Home Owners Loan Corporation as security for an indebtedness in the original sum of $2,810.78, and as of March 12, 1945, for the unpaid principal balance due on this mortgage was $1,738.23.

6. In pursuance of an advertisement by the Alien Property Custodian, the defendant, by a written offer dated April 27, 1945,

offered to purchase from the Alien Property Custodian the above described property and to pay therefor at the time of delivery of a quitclaim deed, "the sum of $3,800.00, and in addition to said sum the offeror agrees to accept property subject to an unpaid mortgage in the principal sum of $1,738.23, together with interest thereon from March 12, 1945." This offer was accepted in writing by the Alien Property Custodian on June 22, 1945. Such acceptance was in accordance with a written administrative recommendation made to the Alien Property Custodian on May 10, 1945, in which the administrative officers specified that the sale price under this arrangement was actually $5538.23, being $3800.00 plus the amount due on the mortgage, namely, $1,738.23.

7. The written offer and acceptance constituted the entire agreement entered into between the parties with respect to the sale of the real property referred to. These documents clearly set forth the terms thereof, and legally required, and were understood by the Alien Property Custodian to require, defendant to pay to the Alien Property Custodian for a quitclaim deed to the premises a total of $3,800.00 in cash, subject to certain minor closing adjustments for insurance, rent, water, taxes and interest, and in addition thereto to take the premises subject to the mortgage referred to in paragraph 5 hereof, without deduction from the selling price of $3,-800.00 of the unpaid amount of the mortgage or any part thereof.

8. At all times material hereto the Detroit Trust Company of Detroit acted as agent and representative of the Alien Property Custodian. On July 16, 1945, there was transmitted to said Detroit Trust Company for delivery to defendant pursuant to said agreement, a quitclaim deed conveying the real property hereinabove described from the Alien Property Custodian to defendant subject to recorded liens and encumbrances.

9. About August 1, 1945, the Alien Property Custodian, by its said agent, Detroit Trust Company, delivered to defendant and defendant received and accepted said quitclaim deed, conveying to defendant title in fee simple to the said property.

10. Defendant entered into possession of said premises, and on August 6, 1945, recorded said quitclaim deed in the Office of the Register of Deeds for Wayne County, Michigan, in Liber 7587 of Deeds, page 587.

11. On August 11, 1945, the date of the said conveyance, the full amount due from defendant to plaintiff's predecessor pursuant to said agreement was $3,542.88, made up as follows:

Charges:

| | | |
|---|---|---|
| Cash payment over mortgage pursuant to agreement | $3,800.00 | |
| Insurance | 8.17 | |
| Taxes | 90.64 | |
| Interest | 30.17 | $3,928.98 |

Credits:

| | | |
|---|---|---|
| Deposit | $ 380.00 | |
| Rents | 2.10 | |
| Water rates | 4.00 | 386.10 |
| Due from defendant | | $3,542.88 |

12. As a result of erroneous instructions inadvertently sent by an employee of the Alien Property Custodian to Detroit Trust Company, said Detroit Trust Company at the time of said conveyance failed to demand payment of the full sum of $3,542.-88, the amount due plaintiff's predecessor pursuant to said agreement, but received from defendant the sum of $1,765.95, which was the amount actually due less the amount of the outstanding mortgage, which deduction of the amount of the mortgage was improper.

13. The receipt of said sum of $1,765.-95 by the Detroit Trust Company did not constitute, nor did plaintiff's predecessor intend that it should be, payment in full of the amount due plaintiff's predecessor from the defendant pursuant to said agreement.

14. On August 29, 1945, upon discovering the error of his agent, Detroit Trust Company, in accepting the lesser sum of $1,765.95 instead of the full sum of $3,-542.88 due plaintiff's predecessor, plaintiff's predecessor, by registered letter to defendant, demanded payment of the balance of $1,776.93 due pursuant to said agreement.

Plaintiff replied that he understood the contract to mean that the price was the lesser sum, which he had paid. By subsequent written and oral communications, plaintiff repeated such demand, the last demand being made on December 6, 1946.

15. Subsequent to plaintiff's predecessor's first demand for payment of said sum of $1,776.93, defendant remodelled and renovated the premises, and on December 10, 1946, he sold same to an innocent third party.

16. Defendant has failed and refused to pay plaintiff the sum of $1,776.93, or any part thereof.

17. There was no ambiguity or uncertainty in the terms of the written documents in question.

### Conclusions of Law

1. This court has jurisdiction of this suit as an action brought by the Alien Property Custodian's successor, the Attorney General, an officer of the United States authorized to sue, for the collection of moneys due from a defendant in this District in connection with sale of property which had been vested in the Alien Property Custodian by virtue of the Trading with the Enemy Act, as amended. 28 U.S.C.A. § 41(1), revised as 28 U.S.C.A. § 1345; 50 U.S.C.A.Appendix, § 6 et seq.; Ex. Order 9788, 11 Fed.Reg. 11961 and 11 Fed. Reg. 12123.

2. A conveyance of land "subject to a mortgage" is a simple deed of whatever interest, estate or equity the grantor has after the debt is satisfied out of the property. Consequently, the agreement in question providing for a conveyance of property to defendant for $3800.00 subject to a mortgage meant that the price to be paid was $3800 without deduction on account of such mortgage. Hartley v. Harrison, 24 N.Y. 170; McNaughton v. Burke, 63 Neb. 704, 89 N.W. 274.

3. Where, as here, there is a written agreement for the sale of land by a United States officer to the defendant for a specific price, the terms of which agreement are clear and unambiguous, and, in consummation of such agreement a deed is inadvertently delivered to the purchaser by an agent for the public officer in exchange for a lesser sum than the price specified in such agreement, and, upon learning of the error the public officer notifies the purchaser of the balance due, and the purchaser thereafter improves the property and sells it to an innocent third person, such purchaser cannot successfully defend the public officer's action for recovery of the balance of the price upon a claim that he, the purchaser, did not understand the meaning of the clear and unambiguous terms of the agreement as to price. Having received the property which was the subject matter of the contract and having insisted upon his right to use and dispose thereof after he received knowledge that he had not paid the full price required by the terms of such contract, he is bound by the terms of such contract.

4. It therefore follows that the plaintiff is entitled to judgment against the defendant for $1,776.93, together with interest thereon at the rate of 5% per annum from the date of delivery and acceptance of the deed in question, namely, August 1, 1945, and taxable costs, which judgment is being entered simultaneously herewith.

### Judgment

In accordance with the foregoing findings of fact and conclusions of law,

It is hereby ordered and adjudged that the plaintiff, Tom C. Clark, Attorney General, as successor to the Alien Property Custodian of the United States, recover from the defendant, Albert Thompson, the sum of $1,776.93, plus interest thereon at the rate of 5% per annum from August 1, 1945, and that plaintiff may tax his costs against defendant.